DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:19-cr-0076 |
| ) | |
| PEDRO RAMOS-GUERRA and ) | |
| CARLOS ALBERTO CUEVAS-ALMONTE, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**APPEARANCES:**

**DELIA SMITH, UNITED STATES ATTORNEY**
**ADAM FRANCIS SLEEPER, ASSISTANT UNITED STATES ATTORNEY**
UNITED STATES ATTORNEY'S OFFICE
ST. THOMAS, U.S. VIRGIN ISLANDS
 FOR THE UNITED STATES OF AMERICA

**MATTHEW A. CAMPBELL, FEDERAL PUBLIC DEFENDER**
**KIA DANIELLE SEARS, ASSISTANT FEDERAL PUBLIC DEFENDER**
OFFICE OF THE FEDERAL PUBLIC DEFENDER
ST. THOMAS, U.S. VIRGIN ISLANDS
 FOR DEFENDANT PEDRO RAMOS-GUERRA

**JOSEPH A. DIRUZZO, III, ESQ.**
DIRUZZO & COMPANY
FT. LAUDERDALE, FLORIDA
 FOR DEFENDANT CARLOS ALBERTO CUEVAS-ALMONTE

## MEMORANDUM OPINION

**MOLLOY,** *Chief Judge*

**BEFORE THE COURT** is Defendant Carlos Alberto Cuevas-Almonte's ("Cuevas-Almonte") Motion to Declare DHS's *Touhy* Regulations Inapplicable, [or] in the alternative, to Declare 5 U.S.C. § 301 Unconstitutional & Invalidate 6 C.F.R. § 5.41 *et seq*. (ECF No. 57.) For the reasons stated herein, the Court will deny the motion.

### I. FACTUAL AND PROCEDURAL BACKGROUND[1]

---

[1] The Court finds the facts listed in the "Factual and Procedural Background" for purposes of this motion only.

Case: 3:19-cr-00076-RAM-RM   Document #: 148   Filed: 02/14/23   Page 2 of 19

*United States v. Ramos-Guerra, et al.*
Case No. 3:19-cr-0076
Memorandum Opinion
Page **2** of **19**

On October 24, 2019, at approximately 9:27 p.m., a United States Customs and Border Protection ("CBP") air unit observed a "Go-Fast" vessel (the "GFV" or the "vessel") in international waters approximately seventy-five (75) nautical miles south of Cabo Rojo, Puerto Rico. (ECF No. 1-1 at 2.) Because the CBP agents suspected the vessel to be involved in smuggling, United States Coast Guard Cutter Diligence ("DIL") engaged to intercept the vessel. *See Id.* at 3. Officers aboard DIL made visual contact with the GFV at approximately 11:28 p.m. *Id.* After approaching the GFV approximately an hour and a half later, the officers "energized their lights and loud hailer, and ordered the [GFV] to heave to." *Id.* The GFV did not comply. Instead, the persons onboard the vessel began to jettison objects overboard. *See id.* USCG officers then fired warning shots at the GFV. *See id.* The GFV eventually stopped, allowing the USCG officers to establish control. (ECF No. 1-1 at 3.) Meanwhile, the persons onboard the GFV began to pull plugs to sink the vessel. *See id.* As the GFV began to take on water, the DIL team removed two persons, later identified to be Cuevas-Almonte and Pedro Ramos-Guerra ("Ramos-Guerra"). *See id.* The USCG officers subsequently recovered approximately 500 kilograms of, what was later determined to be, cocaine. *See id.*

On November 21, 2019, the United States (the "Government") filed a three-count indictment against Ramos-Guerra and Cuevas-Almonte, charging: (1) conspiracy to possess with intent to distribute a controlled substance while on board a vessel subject to the jurisdiction of the United States; (2) possession of a controlled substance with intent to distribute while on board a vessel subject to the jurisdiction of the United States; and (3) destroying property subject to forfeiture under section 511(A) of the Comprehensive Drug Abuse Prevention and Control Act of 1970. (ECF No. 1.) On October 8, 2020, a federal grand jury returned a superseding indictment charging Ramos-Guerra and Cuevas-Almonte with: (1) possession of a controlled substance with intent to distribute while on board a vessel subject to the jurisdiction of the United States; (2) destroying property subject to forfeiture under section 511(A) of the Comprehensive Drug Abuse Prevention and Control Act of 1970; and (3) failure to heave to. (ECF No. 93.)

On January 13, 2020, Cuevas-Almonte filed a motion for a certificate under 28 U.S.C. § 1825(a)(2), and an order directing the U.S. Marshal to serve trial subpoenas upon, and provide travel expenses for, five prospective U.S. Coast Guard witnesses for defendant's

omnibus hearing and trial. (ECF No. 48.) The draft subpoenas further requested that each prospective witness bring "[w]ritten documentation establishing [the] (when, where, how, and why) [regarding] the transfer of CARLOS ALBERTO CUEVAS-ALMONTE from the USCG Diligence to the USCG vessel Charles Davis, Jr., and the subsequent transportation of Cuevas-Almonte from the Charles Davis, Jr. to St. Thomas." *See* ECF No. 48-1 through 48-6. Finding that Cuevas-Almonte did not offer any reasons as to why the prospective witnesses' presence were necessary for his defense, the Magistrate Judge ordered Cuevas-Almonte to supplement his motion with the necessary information or risk the Court denying the motion. *See* ECF No. 50.

Cuevas-Almonte renewed his motion on February 4, 2020, arguing that he needed the testimony from the Coast Guard agents to establish that: the USCG arrested him in international waters; transported him to the District of Puerto Rico; transferred him to another USCG vessel while in port in San Juan; and then transported him to St. Thomas. (ECF No. 54 at 2.) Cuevas-Almonte further argued that the expected testimony would go to his claim of "manufactured venue" and his "as[-]applied constitutional challenge to 46 U.S.C. § 70504(b)(2)." *See id.* at 2. Despite providing some supplemental information, the Magistrate Judge found that Cuevas-Almonte's renewed motion still failed to articulate "what role each of the five Coast Guard employees played in defendant's arrest and transfer." (ECF No. 55 at 4.) Consequently, the Magistrate Judge could "not determine whether the testimony of all five individuals [was] needed to establish the location of the alleged crime and defendant's whereabouts from the time of his arrest." *Id.* Consequently, on February 11, 2020, the Magistrate Judge denied Cuevas-Almonte's motion without prejudice because he failed to sufficiently demonstrate the necessity of the proposed witnesses' presence for an adequate defense, and because the subpoenas were not properly addressed to the Department of Homeland Security's Office of General Counsel in accordance with 6 C.F.R. § 5.43(a). (ECF No. 55.)

Following the denial of his renewed motion, Cuevas-Almonte then filed the instant motion, on March 24, 2020, arguing that the Department of Homeland Securities' *Touhy* Regulations are inapplicable to this case, or in the alternative, that 5 U.S.C. § 301 is unconstitutional and the *Touhy* Regulations are invalid. (ECF No. 57.) The Government

subsequently filed a response to the instant motion on May 7, 2020, to which Cuevas-Almonte filed a reply on May 28, 2020. *See* ECF No. 64 and 66.

## II. LEGAL STANDARD

### a. The Federal Housekeeping Statute and *Touhy* Regulations

The Federal Housekeeping Statute ("Housekeeping Act") provides that the head of an executive department "may prescribe regulations for . . . the conduct of its employees . . . and the custody, use, and preservation of its records, papers, and property." 5 U.S.C. § 301. The Coast Guard, which is part of the Department of Homeland Security ("DHS") is therefore bound by such regulations, commonly known as DHS's "*Touhy* regulations." *See* 6 C.F.R. § 5.41 *et seq.*; *United States ex rel Touhy v. Ragen*, 340 U.S. 462 (1952) (hereinafter "*Touhy*"). Pursuant to Section 301, DHS has issued *Touhy* regulations setting forth the procedures to be followed with respect to disclosure of information in litigation, including requests for:

> (1) Service of summonses and complaints or other requests or demands directed to the [DHS] or to any Department employee or former employee in connection with federal or state litigation arising out of or involving the performance of official activities of the Department; and
>
> (2) The oral or written disclosure, in response to subpoenas, orders, or other requests or demands of federal or state judicial or quasi-judicial or administrative authority as well as state legislative authorities (collectively, "demands"), whether civil or **criminal in nature**, or in response to requests for depositions, affidavits, admissions, responses to interrogatories, document production, interviews, or other litigation-related matters, including pursuant to the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure, or applicable state rules (collectively, "requests"), of any material contained in the files of the Department, any information relating to material contained in the files of the Department, or any information acquired while the subject of the demand or request is or was employed by the Department, or served as Secretary of the Department, as part of the performance of that person's duties or by virtue of that person's official status.

6 C.F.R. § 5.41(a) (emphasis added). DHS's *Touhy* regulations also identify who in the agency may receive service on behalf of agency employees. Regarding the service of subpoenas and other demands or requests for official information or action, the regulations provide:

> (a) Except in cases in which the Department is represented by legal counsel who have entered an appearance or otherwise given notice of their representation, only the Office of the General Counsel is authorized to receive

and accept subpoenas . . . or other demands or requests directed to the Secretary, the Department, or any component thereof, or its employees, whether civil or criminal in nature, for:

. . .

(2) Information, including testimony, affidavits, declarations, admissions, responses to interrogatories, or informal statements, relating to material contained in the files of the Department or which any Department employee acquired in the course and scope of the performance of his official duties;

. . .

(b) In the event that any subpoena, demand, or request is sought to be delivered to a Department other than in the manner prescribed in paragraph (a) of this section, such employee shall, after consultation with the Office of the General Counsel, decline service and direct the server of process to the Departmental regulations. . . .

6 C.F.R. §§ 5.43(a)-(b).

### b. The *Touhy* Decision

The Supreme Court in *United States ex rel. Touhy v. Ragen* (*"Touhy"*), upheld the validity of similar agency regulations governing the circumstances under which federal employees could testify in response to a court subpoena. *See* 340 U.S. 462, 467-68 (1951); *see also Boron Oil co. v. Downie*, 873 F.2d 67, 69 (4th Cir. 1989) ("The Supreme Court has specifically recognized the authority of agency heads to restrict testimony of their subordinates by this type of regulation."). The Court in *Touhy* determined that *s*uch regulations must be permitted in order to "conserve governmental resources," and mitigate the risk of "unrestricted disclosure in court." *Touhy*, 340 U.S. at 468.  While at the time, the *Touhy* Court decided the case on limited grounds—leaving open the question of whether regulations governing agency disclosures would still be valid when the United States was a party to the proceedings—subsequent federal decisions have overwhelming upheld the validity of *Touhy* regulations in the criminal context where the United States was a prosecuting party. *See United States. v. Soriano-Jarquin*, 492 F.3d 495, 504 (4th Cir. 2007) (collecting cases).

### III. DISCUSSION

#### a. The DHS's *Touhy* Regulations are Applicable Here

Cuevas-Almonte argues that DHS's regulations promulgated under the Housekeeping Act, i.e., "the *Touhy* Regulations," are inapplicable to the instant case because the holding in *Touhy* only applies in cases where the United States is merely a third party to the original legal proceeding. (ECF No. 57 at 14.) Therefore, because the United States is the Plaintiff in this case, Cuevas-Almonte concludes that his request for subpoenas is not subject to the procedural requirements set out in DHS's *Touhy* regulations. *See id.* Cuevas-Almonte's argument as to the inapplicability of DHS's *Touhy* regulations in this context is unavailing.

To begin, the Court notes the DHS regulations, by their own terms, state that they apply "in response to subpoenas, orders, or other requests or demands of federal [authority] . . . whether civil or criminal in nature . . .." 6 C.F.R. § 5.41(a)(2). Additionally, nothing in 5 U.S.C. § 301 nor 6 C.F.R. §§ 5.41-5.49 constrains the applicability of the regulations governing disclosure of information in litigation. Thus, a simple plain reading of the statute and regulations at issue in this case indicates that DHS's *Touhy* regulations may still be enforced when the United States is the prosecuting party.

As noted above, Cuevas-Almonte seeks to overcome the plain text reading of DHS's regulations by asserting that the Supreme Court in *Touhy* limited their decision to circumstances where the United States is merely a third party, and thus, an agency's *Touhy* regulations are unenforceable when the United States is the prosecuting party. *See* ECF No. 57 at 14. However, the *Touhy* Court explicitly refused to reach the question of whether such regulations may be enforceable in the federal criminal context. *See Touhy*, 340 U.S. at 467 ("Nor are we here concerned with the effect of a refusal to produce in a prosecution by the United States."). Moreover, since *Touhy*, subsequent federal appellate decisions eliminate any illusion that *Touhy* regulations, and procedures contained therein, cease to apply when the United States is a prosecuting party. *See Soriano-Jarquin*, 492 F.3d at 504-05 (agreeing with other courts of appeals that *Touhy* regulations apply to a defendant seeking to subpoena testimony of agency employees in federal criminal prosecutions); *United States v. Henson*, 123 F.3d 1226, 1237 (9th Cir. 1997) (affirming the lower court's decision requiring the defendant to follow the prescribed agency *Touhy* regulations in the federal criminal case)

(*abrogated on other grounds by Muscarello v. United States*, 524 U.S. 125 (1998)); *United States v. Wallace*, 32 F.3d 921, 929 (5th Cir. 1994) (refusing to reach the defendants' constitutional claims related to the quashing of their subpoenas because the defendants failed to comply with the agency's *Touhy* regulations); *United States v. Bizzard*, 674 F.2d 1382, 1387 (11th Cir. 1982) (rejecting challenge that *Touhy* regulations violate the Fifth and Sixth Amendments); *United States v. Marino*, 658 F. 2d 1120, 1125 (6th Cir. 1981) (unwilling to consider federal criminal defendant's Sixth Amendment claims regarding the refusal to produce agency witnesses pursuant to the agency's *Touhy* regulations because the defendant failed to comply with the regulations); *United States v. Allen*, 554 F. 2d 398, 40607 (10th Cir. 1977) (confirming *Touhy* regulations apply in the federal criminal context, and therefore, refusing to consider the constitutional questions raised by defendant due to his failure to comply with the agency's *Touhy* regulations) *cert. denied*, 434 U.S. 836 (1977).[2] [3]

While some circuit courts have indicated an agency head may not entirely withhold documentary or testimonial evidence when the United States is a party to the litigation, such holdings are a far cry from Cuevas-Almonte' assertion that *Touhy* regulations have no place in litigation involving the United States. *See, e.g., Committee for Nuclear Responsibility, Inc. v. Seaborg*, 463 F.2d 788, 793–94 (D.C. Cir. 1971) (noting that while section 301 permits the agency to issue regulations centralizing the disclosure process, it does not confer to the

---

[2] The Court takes note of Cuevas-Almonte's reference to the D.C. District Court decision in *Alexander v. F.B.I.*, where the court found that the Supreme Court's holding in *Touhy* is applicable only in cases where the United States is not a party to the original legal proceeding. *See* 186 F.R.D. 66, 70 (D.D.C. 1998). After a thorough review of the case, however, this Court finds that the *Alexander* court failed to cite authority supporting such a sweeping proposition. Instead, the court, in that case, relied on precedent which either affirmed the validity of *Touhy* regulations preventing agency employee testimony when the United States is a third party, or held that when the United States is a party to the case, the Agency head cannot rely on *Touhy* regulations to withhold testimonial or documentary evidence entirely. None of those decisions hold that the *Touhy* regulatory procedures for requesting evidence do not apply when the federal government is a party. *See Alexander*, 186 F.R.D. at 69-71. Thus, given the lack of legal support for the *Alexander* court's conclusion, and the fact that it is merely a persuasive decision from another district court, the Court has determined it will not follow the holding in that case.

[3] Cuevas-Almonte also highlighted in his reply brief that the Government failed to discuss his reference to *Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*, where the district court said "[t]he purpose of *Touhy* regulations is to conserve governmental resources where the United States is not a party to a suit . . . ." 367 F. Supp. 3d 267, 280-81 (M.D. Pa. 2019). However, there was no need for the Government to address this non-binding case especially since the decision directly quoted a proposition from a 1989 Fourth Circuit opinion, a proposition that has since been abrogated by that Circuit. *See Soriano-Jarquin*, 492 F.3d at 504.

agency the authority to assert a privilege or foreclose disclosures of agency records in judicial proceedings); *Exxon Shipping Co. v. United States Dept. of Interior*, 34 F.3d 774, 777 (9th Cir. 1994) (finding that a federal agency head may not "withhold evidence sought under a valid federal court subpoena"). Given the circumstances in this case, the Court finds that it is still appropriate to enforce the *Touhy* regulations at issue for several reasons.

First, in cases where the United States is a party to the litigation, there is undoubtedly still a need to preserve governmental resources, and thus, the *Touhy* Court's rationale for upholding these types of regulations remains relevant in federal criminal proceedings. *See Marino*, 658 F.2d at 1125 ("Without a procedure governing demands by potential litigants [in federal criminal cases], the efficiency of the Department could be greatly impaired.").

More importantly, unlike other successful challenges to agency *Touhy* regulations, where the Agency head refused to produce documents and testimony, Cuevas-Almonte is merely challenging the procedures he must follow to obtain the evidentiary testimony. Because Cuevas-Almonte has yet to comply with DHS's *Touhy* regulations, DHS has yet to refuse his request for testimonial evidence. Thus, unlike in the refusal cases, there has yet to be a deprivation of rights or a constitutional issue raised since Cuevas-Almonte has not been foreclosed from obtaining evidence as a result of agency action. *See Soriano-Jarquin*, 492 F.3d at 504 (noting defendant was not deprived a constitutional right when he failed to comply with the agency's *Touhy* regulation); *Allen*, 554 F.2d. at 407; *see also Marino*, 658 F.2d at 1125 (concluding that questions regarding deprivation of constitutional rights are not reached "until the defendants follow the procedures and then have their demands denied"); *United States v. Lyimo*, 574 Fed. App'x 667, 670 (6th Cir. 2014) (holding that precedent "requires a defendant to follow the appropriate *Touhy* procedures and have his or her demand denied before questions about the constitutionality of the procedures may be entertained"). Cuevas-Almonte may still obtain the testimonial evidence he seeks by simply complying with rule 17(b) and the DHS regulations as set out by the Magistrate Judge in her February 11, 2020 Order. (ECF No. 55.) Therefore, DHS has not yet deprived the defendant of any evidence in this judicial proceeding. In light of these considerations, the Court sees no reason to deviate from the long line of circuit court precedent applying *Touhy* regulations in the federal criminal context.

### b. The DHS Regulations Do Not Violate the Defendant's Due Process Rights

Cuevas-Almonte next argues that the Magistrate Judge committed an error when she declined to issue his requested subpoenas based on the procedural requirements in 6 C.F.R. § 5.45(a). (ECF No. 57 at 15.) Cuevas-Almonte asserts that under the Ninth Circuit's decision in *Bahamonde*, 6 C.F.R. § 5.45(a) "'violates due process by failing to provide reciprocal discovery.'" *Id.* (quoting *United States v. Bahamonde*, 445 F.3d 1225, 1228-29 (9th Cir. 2006)). However, *Bahamonde* is not relevant here as the Magistrate Judge did not decline to issue the subpoenas based on 6 C.F.R. § 5.45(a)'s writing and specificity requirement found unconstitutional in that decision. *See* 445 F.3d 1225.[4] Instead, the Magistrate Judge relied on Federal Rule of Criminal Procedure 17(b), governing the issuance of a subpoena, and 6 C.F.R. § 5.43(a), which governs who in DHS may accept subpoenas directed at agency employees.

Under Rule 17(b), a court may reject the issuance of a subpoena if the defendant does not "show[] . . . the necessity of the witness's presence for an adequate defense." Fed. R. Crim. P. 17(b). When the Magistrate Judge denied Cuevas-Almonte's motion to issue subpoenas, she specifically found "[i]n sum, defendant fail[ed] to demonstrate *the necessity of these witnesses' presence for an adequate defense.*" ECF No. 55 (emphasis added).[5] Therefore, the Magistrate Judge squarely relied on Rule 17 as the primary bases for rejecting the motion. To the extent the Magistrate Judge's Order even invoked DHS's *Touhy* regulations, the only deficiency she found was Cuevas-Almonte's failure to address the subpoenas to the General Counsel's office as required pursuant to 6 C.F.R. § 5.43(a). *See* ECF No 55 at 5. At no point did the Magistrate Judge refer to the writing or specificity requirement under 6 C.F.R. § 5.45(a) as a basis for denying Cuevas-Almonte's motion to issue subpoenas. Accordingly, because the Magistrate Judge did not rely on 6 C.F.R. § 5.45(a) as a basis for denying the motion, that

---

[4] In *Bahamonde*, the Ninth Circuit found that the *Touhy* regulation mandating the defendant, but not the Government, to state, with specificity, the testimony he expected to obtain from the witnesses violated the reciprocal discovery requirement under the Due Process Clause of the Fifth Amendment. 445 F.3d at 1229-31.

[5] *See also* ECF No. 50 (finding initial motion needed to be supplemented because "defendant offers no reason why [witnesses'] presence is necessary for an adequate defense" as required under Rule 17(b)).

regulation did not and could not violate Cuevas-Almonte's due process rights under the theory set out in *Bahamonde*.[6] Therefore, this argument is without merit.

### c. Applying DHS's *Touhy* Regulations to this Case Does Not Violate the Separation of Powers Doctrine

Cuevas-Almonte also maintains that *Touhy* regulations violate the separation of powers doctrine. (ECF No. 57 at 15-16). He argues that "*Touhy* Regulations are unconstitutional" because "allow[ing] a party, i.e., the Federal Government, to determine what evidence must be produced when it conducts the very litigation at issue strikes at the very heart of our country's constitutional design." *Id.* at 15.[7] However, there is no separation of powers issue implicated here. Despite Cuevas-Almonte's assertion that the Government is "determine[ing] what evidence must be produced," that authority remains firmly with this Court. *Id.* Although Congress has granted DHS and other executive agencies the power, pursuant to Section 301, to promulgate regulations addressing the manner and procedures for requests of agency evidence, the courts still maintain the ability to review such procedures and ultimately compel production through the enforcement of a valid court subpoena. *See Houston Business Journal, Inc. v. Office of Comptroller of Currency, United States Department of the Treasury*, 86 F.3d 1208, 1212 (D.C. Cir. 1996); *Seaborg*, 463 F.2d at 793-94, n. 8; *Liptak v. Ramsey County*, CIV. NO. 16–2252016 WL 5662082, at *8 (D. Minn. Aug. 24, 2016). As such, the Court's judicial function is not threatened by DHS's *Touhy* regulations in this instance.

---

[6] The Court also notes that because the Cuevas-Almonte is not challenging the reciprocal discovery requirements imposed on him, the holding in *Bahamonde* is irrelevant to the disposition of this motion. *See* ECF No. 66 ("nor has the Defendant moved for reciprocal discovery").

[7] Cuevas-Almonte contends in his reply brief that the Government did not respond to his separation of powers argument, and thus, effectively conceded the issue. *See* ECF No. 66. However, the Government's failure to respond is not fatal in this instance. When a party merely makes conclusory assertions and passing reference to an issue in its opening brief, the party has not properly raised the issue before the Court. *See Com. of Pa. Dept. of Public Welfare v. U.S. Dept. of Health and Human Services*, 101 F.3d 939, 945 (3rd Cir. 1996); *Laborers' Int'l Union of N. Am. V. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994). Cuevas-Almonte's argument regarding the separation of powers issue is undoubtedly a conclusory argument made in passing. *See* ECF No. 57 at 15. As such, the Government did not have to address the issue because the argument was already effectively waived by the defendant's failure to meaningfully raise the claim.

Furthermore, as previously noted by this Court, "*Touh*y essentially fosters the separation of powers by requiring parties to exhaust administrative remedies with the agency—thus preventing courts from unduly intruding on executive agency operations—subject to the court's subsequent review of whether agency information withheld is protected by a recognized privilege." *Gillette v. Herbert*, No. CV 2017-0042, 2020 WL 5579824, at *6 (D.V.I. Sept. 16, 2020).

Moreover, even if DHS's *Touhy* regulations raised separation of powers concerns, Cuevas-Almonte does not identify any information or testimony that DHS has withheld in the instant case. As it currently stands, Cuevas-Almonte's failure to properly address his subpoenas and comply with Rule 17(b) are all that have precluded him from accessing the testimony he seeks. *See* ECF No. 55. In fact, DHS has not had an opportunity to render a decision on his request for testimony, and therefore, the Agency has yet to deny the defendant access to evidence. Consequently, Cuevas-Almonte constitutional challenge here is premature at best, and almost certainly without merit. Accordingly, granting the motion on this basis is not warranted.

### d. 5 U.S.C. § 301 Does Not Violates the Nondelegation Doctrine

"The nondelegation doctrine is rooted in the principle of separation of powers that underlies our tripartite system of Government." *Mistretta v. United States*, 488 U.S. 361, 371 (1989). The nondelegation doctrine focuses on Article I, Section 1 of the Constitution which states that "All legislative powers herein granted shall be vested in a Congress of the United States." U.S. Const. art. I § 1. To preserve the functional integrity of the three branches in this system, and the legislative branch in particular, [t]he nondelegation doctrine bars Congress from transferring its legislative power to another branch of Government." *Gundy v. United States*, 139 S. Ct. 2116, 2121 (2019).

Notwithstanding this limitation, the Supreme Court has made clear that the Constitution does not prevent Congress from "obtaining the assistance of its coordinate branches," with the extent and character of that assistance "fixed according to common sense and the inherent necessities of the governmental co-ordination." *Mistretta*, 488 U.S. at 372; *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 406 (1928). Thus, under the nondelegation doctrine, Congress may still delegate substantial statutory authority so long

as Congress "lay[s] down by legislative act an intelligible principle to which the person or body authorized to [exercise that authority] is directed to conform." *Gundy*, 139 S. Ct. at 2123 (internal quotations omitted). The intelligible principal standard is extremely deferential given that the courts have "'almost never felt qualified to second-guess Congress regarding the permissible degree of policy judgment that can be left to those executing or applying the law.'" *Whitman v. Am. Trucking Assoc.*, 531 U.S. at 474–75, 121 S.Ct. 903 (quoting *Mistretta*, 488 U.S. at 416 (Scalia, J., dissenting)); *see also United States v. Cooper*, 750 F.3d 263, 270 (noting that the Supreme Court has not invalidated a statute for violating the nondelegation doctrine in nearly 80 years). As noted by the Third Circuit in *Cooper*:

> On only two occasions has the Court invalidated legislation based on the nondelegation doctrine, and both occurred in 1935. First, in *Panama Refining Co. v. Ryan,* 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935) (Hughes, C.J.), the Court invalidated Section 9(c) of the National Industrial Recovery Act of 1933, which authorized the President to prohibit the shipment of oil produced in excess of state-imposed quotas. The Court held that this portion of the Act was an impermissible delegation because it lacked any standard whatsoever to limit the President's discretion . . . . Similarly, in *A.L.A. Schechter Poultry Corp. v. United States,* 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935) (Hughes, C.J.), the Court struck down Section 3 of the National Industrial Recovery Act, which authorized the President to approve "codes of fair competition" for trades or industries, as an unconstitutional delegation of authority. The Court emphasized that the statute completely failed to define "fair competition" and thus impermissibly transferred to the executive branch the power to create law . . . .

*Cooper*, 750 F.3d at 268. Thus, based on the Supreme Court's current precedent, a statute must effectively have no discernable standard for which the agency can rely upon to issue regulations.

Despite this exceptionally high bar, Cuevas-Almonte proceeds to argue that 5 U.S.C. § 301, violates the nondelegation doctrine because: (1) it is "exceedingly broad" as DHS's *Touhy* regulations are "completely dependent upon who makes the decision, i.e., whoever is the Secretary of DHS at the time;" (2) the statute lacks 'an intelligible principle to guide the delegee's use of discretion;'" and (3) the statute does not implicate mere non-legislative functions and responsibilities because the regulations "provided the basis for limiting "the

Defendant's access to evidence" while also providing "the Federal Government advance notice of what evidence the defendant seeks." (ECF No. 57 at 10-15.)

In support of his argument, Cuevas-Almonte relies primarily on the dissent in *Gundy* which addressed the issue of "whether 34 U.S.C. § 20913(d), enacted as part of the Sex Offender Registration and Notification Act (SORNA)," violated the nondelegation doctrine. *Gundy*, 139 S. Ct. at 2121. Cuevas-Almonte asserts that, in contrast to the SORNA provision at issue in *Gundy*, "5 U.S.C. § 301 directs the agency to make the entire panoply of policy decisions for individuals desiring evidence from the Federal Government." (ECF No. 57 at 19.) Thus, according to Cuevas-Almonte, "the statute here stands in stark contrast to examples where the Supreme Court upheld delegation." *Id.*

The Government contends that Section 301 merely provides departments of the executive branch with the power to provide procedures for the orderly course of business—a power the government contends was already within the scope of the executive branch's authority. *See* ECF No. 64 at 15-17. Thus, because Congress is not delegating legislative power, but merely authorizing executive power in this instance, no nondelegation issue exists. *See id.* at 17. In reply, Cuevas-Almonte asserts that DHS's "*Touhy* regulations have the substantive effect of vitiating a subpoena issued by a co-equal branch of government"—"a core legislative power." (ECF No. 66 at 7-8.) Contrary to Cuevas-Almonte's assertion, Section 301 is well within the outer bounds of the Supreme Court's intelligible principle precedents. As such, Congress did not delegate core legislative functions to the executive branch when it enacted the Housekeeping Act.

In the only two cases in United States history where the Supreme Court has found a statute violated the nondelegation doctrine, the statute in question either "provided literally no guidance for the exercise of discretion," or "conferred authority to regulate the entire economy on the basis of no more precise a standard than stimulating the economy by assuring 'fair competition.'" *Whitman*, 531 U.S. at 474 (citing *Panama Refining Co. v. Ryan*, 293 U.S. 388 (1935); *A.L.A. Schechter Poultry Corp. v. United States*, 294 U.S. 495 (1935)). In contrast to the statutes in *Panama Refining* and *Schechter Poultry*, Section 301 provides a substantially more definite limit to the head of the executive department's discretion. While the head of the agency has broad discretion to issue regulations regrading the "custody, use,

and preservation of [the agency's] records, papers, and property," Section 301 expressly "does not authorize withholding information from the public or limiting the availability of records to the public." 5 U.S.C. § 301. This limitation ensures that the agency head may not arbitrarily deny access to public records, including records related to ongoing litigation. *See Seaborg*, 463 F.2d at 793 n. 8. Thus, Congress provided a clear policy principle that effectively constrains agency discretion regarding the disclosure of agency records. Accordingly, because we live in an "increasingly complex society," where "Congress simply cannot do its job absent an ability to delegate power under broad general directives," the Court is unwilling today to find that Section 301 lacks an intelligible principle that sufficiently limits the discretion of agencies heads regarding the procedure for producing agency records. *Mistretta*, 488 U.S. at 371 (citing *Opp Cotton Mills, Inc. v. Administrator, Wage and Hour Div. of Dept. of Labor*, 312 U.S. 126, 145 (1941); *United States v. Robel*, 389 U.S. 258, 274 (1967)). As such, the Court finds that 5 U.S.C. § 301 does not violate the nondelegation doctrine.

  **e. 6 C.F.R. § 5.41 et seq. Complies with the Requirements of the APA and RFA**

Next, Cuevas-Almonte argues that 6 C.F.R. § 5.41, *et seq.,* failed to comply with the Administrative Procedure Act ("APA") requirements, namely, 5 U.S.C. § 553, requiring the agency to engage in the process known as notice-and-comment rulemaking.[8] (ECF No. 57 at 23.) The defendant also contends the agency's failure to comply with the notice and comment requirements may not be excused by DHS's determination "'that notice and public procedure are impracticable, unnecessary and contrary to the public interest pursuant to 5 U.S.C. 553(b)(B),[] because there was no "emergency," and "the narrow construction of Section 533(b)(B) militates against a finding of good cause under the facts presented here." *Id.* at 24-25.

---

[8] There are three steps involved in the notice and comment rulemaking process: "First, the agency must publish a 'notice of proposed rule making' in the Federal Register. 5 U.S.C. § 553(b). Next, the agency must afford 'interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments.' § 553(c). Finally, 'after consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose.' *Id.*" *Oakbrook Land Holdings, LLC v. Commissioner of Internal Revenue*, 28 F.4th 700, 710 (6th Cir. 2022). Cuevas-Almonte asserts that the agency failed to comply with all of these requirements. *See* ECF No. 57 at 22-28.

*United States v. Ramos-Guerra, et al.*
Case No. 3:19-cr-0076
Memorandum Opinion
Page **15** of **19**

In addition, Cuevas-Almonte argues that the regulations violated the Regulatory Flexibility Act ("RFA") because there was not an "RFA analysis," or alternatively, a "certification that the regulations would not have a significant economic impact on a substantial number of small entities." *Id*. at 31.

The Government, in opposition, argues that the procedural requirements of the APA and the RFA only apply to substantive rules not valid rules of agency organization, procedure, or practice issued pursuant to 5 U.S.C. § 301. Therefore, according to the Government, because DHS's regulations are valid rules of agency organization and procedure that "do not trench on the defendant's substantive rights," the procedural requirements of the APA and the RFA do not apply here. (ECF No. 64 at 12.) Moreover, even if the regulations were to be deemed substantive, the Government contends that the regulations are still excluded from the APA's notice and comment requirements and the RFA's regulatory analysis requirements because DHS made a good cause finding that notice and public procedure were impracticable, unnecessary, or contrary to the public interest. *Id.* at 13.

In reply, Cuevas-Almonte asserts that DHS's regulations are, nevertheless, "substantive rules" because they "vitiate/obviate a federal subpoena, and operate to limit the Defendant's right to discovery under the Federal Rules of Criminal Procedure and the Constitution." (ECF No. 68 at 9.) Accordingly, because Cuevas-Almonte maintains that the regulations at issue are substantive rules, he contends they must nonetheless go through a notice and comment review as well as a regulatory flexibility analysis. *See* ECF No. 66.

Despite Cuevas-Almonte's insistence to the contrary, DHS's *Touhy* regulations are not substantive rules. To be a substantive rule, the regulation must, in fact, alter rights or duties. *See Chrysler Corp. v. Brown*, 441 U.S. 281, 301 & n. 30 (1979) (stating that a substantive or legislative rule is one that "affect[s] individual rights and obligations"). Merely imposing a burden, even a substantial procedural burden, is not enough to convert a purely procedural regulation into a substantive or legislative rule. *See Glickman*, 229 F.3d at 281; *see also JEM Broad. Co. v. FCC*, 22 F.3d. 320, 326 (D.C. Cir. 1994) (asserting that the "'critical feature'" of a rule that satisfies the so-called "procedural exception 'is that it covers agency actions that do not themselves alter the rights or interests of parties, although it may alter the manner in

which the parties present themselves or their viewpoints to the agency.'") (quoting *Batterson v. Marshall*, 648 F.2d 694, 707 (D.C. Cir. 1980)). Here, the *Touhy* regulations at issue merely provide the procedures for serving a subpoena regarding agency employees. See 6 C.F.R. §§ 5.41(a)(2)-5.43(a)(1)-(2); ECF No. 55. The procedures in no way change Cuevas-Almonte's rights or duties regarding access to agency records.

Accordingly, DHS's *Touhy* regulations are exempt from the rulemaking process specified in Section 553 of the APA because DHS's regulations concern matters relating to agency management or personnel and do not impact substantive right. *See* 5 U.S.C. § 553(a)(2);[9] *see also Gillette*, 2020 WL 5579824 at *7 (finding specifically that DHS's *Touhy* regulations are rules relating to agency management or personnel, and are thus exempt from the APA notice and comment requirements under Section 553) (citations omitted); *Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 62 (1st Cir. 2007) ("As we have explained, the *Touhy* regulations are only procedural. . . ."); *United States v. Manafort*, 312 F. Supp. 3d 60, 75 (D.D.C. 2018) (finding that the agency did not need to subject the regulations pursuant to Section 301 to the APA rulemaking procedures because the *Touhy* regulations were merely housekeeping procedures which did not create substantive or procedural rights); *Liptak*, 2016 WL 5662082 at *10-11 (finding the agency's *Touhy* regulations exempt from the APA's rulemaking procedures). Likewise, the general notice and hearing requirement related to agency rulemaking do not apply because DHS's *Touhy* regulations are "rules of agency organization, procedure, or practice," under 5 U.S.C. § 553 (b)(A). See *Gillette*, 2020 WL 5579824 at *7. Therefore, given the nature of these regulations, they are not subject to the notice and comment rulemaking requirements of the APA.[10] Additionally, since the DHS regulations at issue here are exempt from the requirements set forth in Section 553 of the APA, the RFA requirements also do not apply. *See* 5 U.S.C. § 604(a) (stating that an

---

[9] Section 553(a)(2) states that Section 553 of Title 5 "applies, according to the provisions thereof, except to the extent that there is involved . . . a matter relating to agency management or personnel or to public property, loans, grants, benefits, or contracts."

[10] Because the Court has found the *Touhy* regulations at issue are exempt from the APA rule making procedures under Section 553(a)(2) and 553(b)(a), the Court will not consider whether the regulations are also exempt under the "good cause exception" pursuant to Section 553(b)(B).

agency must only conduct a regulatory flexibility only applies "when an agency promulgates a final rule under section 553 of [Title 5] . . . or promulgates a final interpretive rule involving the internal revenue laws of the United States as described in section 603(a)").

### f. DHS's Touhy Regulations Are Not Arbitrary and Capricious

Cuevas-Almonte final argument is that DHS's *Touhy* regulations are arbitrary and capricious because the agency relied on improperly delegated statutory authority and because DHS failed to consider the due process considerations at play in criminal cases when the agency enacted its *Touhy* regulations. (ECF No 57 at 28.) Furthermore, Cuevas-Almonte contends the regulations fail the *State Farm* standard of review which requires DHS to establish that the agency's regulations resulted from an examination of relevant data and reasoned decision making. *See id.* at 29-30; *see also Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The Government opposes this argument by asserting that Congress properly delegated the authority to enact these regulations under 5 U.S.C. § 301 and DHS adequately articulated a rational connection between the facts found and the regulations issued. *Id.* at 15.

DHS's *Touhy* regulations are not arbitrary or capricious under any of these theories. Cuevas-Almonte's first argument is without merit because, as the Court explained previously, Section 301 provides an intelligible principle. Therefore, Section 301 does not violate the nondelegation doctrine. Accordingly, it was not arbitrary and capricious for the agency to rely on Section 301 to enact its *Touhy* regulations. Cuevas's second theory carries no more weight. As the Court already noted, the challenged regulations do not affect substantive rights, and thus, do not implicate Cuevas-Almonte's due process rights. Therefore, DHS did not fail to consider the due process considerations of these specific regulations as there are no due process rights at issue here.

Lastly, DHS's *Touhy* regulations also survive *State Farm* scrutiny. Under *State Farm*, judicial review is not only narrow in scope but deferential in nature. *See State Farm Mut. Auto. Ins. Co.*, 463 U.S. at 43 ("The scope of review under the 'arbitrary and capricious' standard is narrow. . .."); *Federal Communication Commission v. Prometheus Radio Project*, 141 S. Ct. 1150, 1155 (2021) (emphasizing that *State Farm* "judicial review is deferential in nature"). A court may not substitute its own policy judgment for that of the agency. *Id.*

Therefore, all an agency must do to satisfy *State Farm* review is ensure that it "examine[s] the relevant data and articulate[s] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *State Farm Mut. Auto. Ins. Co.*, 463 U.S. at 43 (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). An agency rule will normally only be arbitrary and capricious if:

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. *Id.*

DHS's *Touhy* regulations satisfy the *State Farm* requirements as the regulations are both reasonable and reasonably explained. *See Prometheus Radio Project*, 141 S. Ct. at 1155. In connection with its *Touhy* regulations, DHS determined the following: (1) "[b]ecause the DHS came into existence on January 24, 2003, it is necessary to promptly establish procedures to facilitate the interaction of the public with the Department;" and (2) "[t]his interim final rule generally parallels the procedures concerning the disclosure of information in litigation currently used by other agencies." Production or Disclosure of Official Information in Connection with Legal Proceedings, 68 C.F.R. § 4070-01 (2003). Under the circumstances and considering the deferential standard applicable here, DHS adequately articulated a rational connection between the facts it determined and the regulations it issued. Accordingly, DHS's *Touhy* regulations are not arbitrary and capricious. *See SBS Inc. v. F.C.C.*, 414 F.3d 486, 496 (3d Cir. 2011) ("this is a deferential standard that presumes the validity of agency action."); *Prometheus Radio Project*, 141 S. Ct. at 1155 ("A court [during arbitrary and capricious review] simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision."). Having failed to establish that regulations are arbitrary and capricious, granting Cuevas-Almonte's motion on this ground is not warranted.

## IV. CONCLUSION

For the reasons set forth herein, Cuevas-Almonte's Motion to Declare DHS's *Touhy* Regulations Inapplicable, [or] in the alternative, to Declare 5 U.S.C. § 301 Unconstitutional & Invalidate 6 C.F.R. § 5.41 *et seq.*, ECF No. 57, is denied. An appropriate Order follows.

*United States v. Ramos-Guerra, et al.*
Case No. 3:19-cr-0076
Memorandum Opinion
Page **19** of **19**

**Dated:** February 14, 2023              */s/ Robert A. Molloy*
                                          **ROBERT A. MOLLOY**
                                          **Chief Judge**