# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:19-cr-0076 |
| ) | |
| CARLOS ALBERTO CUEVAS-ALMONTE ) | |
| ) | |
| Defendant. ) | |
| ) | |

**ATTORNEYS:**

**DELIA L. SMITH, UNITED STATES ATTORNEY**
**ADAM F. SLEEPER, ASSISTANT UNITED STATES ATTORNEY**
UNITED STATES ATTORNEY'S OFFICE
ST. THOMAS, U.S. VIRGIN ISLANDS
    *FOR THE UNITED STATES OF AMERICA*

**JOSEPH A. DIRUZZO, III, ESQ.,**
DIRUZZO & COMPANY
FT. LAUDERDALE, FLORIDA
    *FOR DEFENDANT CARLOS ALBERTO CUEVAS-ALMONTE*

## MEMORANDUM OPINION

**MOLLOY, Chief Judge.**

**BEFORE THE COURT** is Defendant Carlos Alberto Cuevas-Almonte's ("Cuevas-Almonte") Motion to Declare Department of Homeland Security ["DHS"] Actions Unconstitutional & Invalidated/Set Aside All Agency Action. (ECF No. 75.) For the reasons stated below, the motion will be denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On April 9, 2019, Secretary of DHS, Kirstjen Nielsen ("Nielsen"), signed a Memorandum for the Secretary from General Counsel, stating: "By approving the attached document, you will designate your desired order of succession for the Secretary of Homeland Security in accordance with your authority pursuant to Section 113(g)(2) of title 6, United States Code." (ECF No. 84-1 at 69.) Attached to the April 9, 2019 Memorandum for the

Secretary was a document styled "Amending the Order of Succession in the Department of Homeland Security" (ECF No. 84-1 at 70), stating:

> Annex A of DHS Orders of Succession and Delegations of Authorities for Named Positions, Delegation No. 00106, is hereby amended by striking the text of such Annex in its entirety and inserting the following in lieu thereof:
>
> Annex A. Order for Delegation of Authority by the Secretary of the Department of Homeland Security.
>
> 1. Deputy Secretary of Homeland Security;
> 2. Under Secretary for Management;
> 3. Commissioner of U.S. Customs and Border Protection;
> 4. Administrator of the Federal Emergency Management Agency;
> 5. Director of the Cybersecurity and Infrastructure Security Agency;
> 6. Under Secretary for Science and Technology;
> 7. Under Secretary for Intelligence and Analysis
> 8. Administrator of the Transportation Security Administration;
> 9. Director of U.S. Immigration and Customs Enforcement;
> 10. Director of U.S. Citizenship and Immigration Services;
> 11. Under Secretary for Strategy, Policy, and Plans;
> 12. General Counsel;
> 13. Deputy Under Secretary for Management;
> 14. Deputy Commissioner of U.S. Customs and Border Protection;
> 15. Deputy Administrator of the Transportation Security Administration;
> 16. Deputy Director of U.S. Immigration and Customs Enforcement;
> 17. Deputy Director of U.S. Citizenship and Immigration Services;
> 18. Director of the Federal Law Enforcement Training Center.
>
> No individual who is serving in an office herein listed in an acting capacity, by virtue of so serving, shall act as Secretary pursuant to this designation.

On April 10, 2019, Nielsen resigned from her position as Secretary of DHS and issued a "Farewell Message from Secretary Kirstjen M. Nielsen," stating that United States Customs and Border Protection ("USCBP") Commissioner Kevin McAleenan ("McAleenan") "will now lead DHS as your Acting Secretary." (ECF No. 84-3.) On November 8, 2019, McAleenan signed an "Amendment to the Order of Succession for the Secretary of Homeland Security," (ECF No. 84-1 at 71), containing "Annex A, Order for Delegation of Authority by the Secretary for the Department of Homeland Security," providing as follows:

> 1. Deputy Secretary of Homeland Security;
> 2. Under Secretary for Management;
> 3. Commissioner of the U.S. Customs and Border Protection;
> 4. Under Secretary for Strategy, Policy, and Plans;

> 5. Administrator and Assistant Secretary of the Transportation Security Administration;
>
> 6. Administrator of the Federal Emergency Management Agency;
>
> No individual who is serving in an office herein listed in an acting capacity, by virtue of so serving, shall act as Secretary pursuant to this designation.

McAleenan resigned as Acting Secretary of DHS on November 13, 2019, (ECF No. 84-1, Blackwell Decl. ¶ 7), when the Under Secretary for Strategy, Policy, and Plans, Chad Wolf ("Wolf"), assumed the title of Acting Secretary of DHS and designated the Principal Deputy Director of U.S. Citizenship and Immigration Services, Kenneth Cuccinelli ("Cuccinelli"), as the Senior Official Performing the Duties of Deputy Secretary of Homeland Security.

On August 14, 2020, the U.S. Government Accountability Office ("GAO") issued a decision in the Matter of: Department of Homeland Security—Legality of Service of Acting Secretary of Homeland Security and Service of Senior Official Performing the Duties of Deputy Secretary of Homeland Security, stating:

> Upon Secretary Kirstjen Nielsen's resignation on April 10, 2019, the official who assumed the title of Acting Secretary had not been designated in the order of succession to serve upon the Secretary's resignation. Because the incorrect official assumed the title of Acting Secretary at that time, subsequent amendments to the order of succession made by that official were invalid and officials who assumed their positions under such amendments, including Chad Wolf and Kenneth Cuccinelli, were named by reference to an invalid order of succession. We have not reviewed the legality of other actions taken by these officials; we are referring the matter to the Inspector General of DHS for review.

(ECF No. 75-1 at 1.)

On October 24, 2019, the United States Coast Guard ("USCG") arrested Carlos Alberto Cuevas-Almonte ("Cuevas-Almonte") and his co-defendant Pedro Ramos-Guerra ("Ramos-Guerra") in international waters approximately 75 nautical miles sough of Cabo Rojo, Puerto Rico, after interdicting their vessel and seizing approximately 500 kilograms of cocaine. (ECF No. 1-1.) Thereafter, a grand jury returned an indictment charging Cuevas-Almonte and Ramos-Guerra with possession of a controlled substance with intent to distribute while on board a vessel subject to the jurisdiction of the United States, and conspiracy to do the same. The original indictment also charged the defendants with destroying property subject to forfeiture under section 511(a) of the comprehensive drug abuse prevention and control act

of 1970. (ECF No. 1.) On October 8, 2020, the Government filed a superseding indictment wherein the grand jury charged the defendants with the same offenses in Count One and Two but replaced the charge in Count Three with the charge of failure to heave to. (ECF No. 93.)

On August 20, 2020, Cuevas-Almonte filed the instant motion. (ECF No. 75.) The Government filed its opposition on September 10, 2020, to which Cuevas-Almonte filed a reply on September 17, 2020. (ECF Nos. 84 and 88.)

## II. LEGAL STANDARD

The Appointment Clause of the United States Constitution provides that the President

> shall nominate, and by and with the Advice and Consent of the Senate, shall appoint . . . all . . . Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. Const. art. II, § 2, cl. 2. "The principle of separation of powers is embedded in the Appointments Clause." *Freytag v. Comm'r*, 501 U.S. 868, 882 (1991).

The Federal Vacancies Reform Act of 1998 ("FVRA") provides that, if an officer of an executive agency, such as the Secretary of DHS, "whose appointment to office is required to be made by the President, by and with the advice and consent of the Senate, dies, resigns, or is otherwise unable to perform the functions and duties of the office," "the first assistant to the office of such officer shall perform the functions and duties of the office temporarily in an acting capacity subject to the time limitations of section 3346." 5 U.S.C. § 3345(a)(1). "An action taken by any person who is not acting under section 3345, 3346, or 3347, or as provided by subsection (b), in the performance of any function or duty of a vacant office to which this section and sections 3346, 3347, 3349, 3349a, 3349b, and 3349c apply shall have no force or effect." 5 U.S.C.A. § 3348(d)(1). FVRA's "Section 3345 and 3346 are the exclusive means for temporarily authorizing an acting official to perform the functions and duties of any office of an Executive agency . . . for which appointment is required to be made by the President, by and with the advice and consent of the Senate," unless another statute provides an exception. 5 U.S.C.A. § 3347(a)(1). The Homeland Security Act of 2002 ("HSA") contains such an exception providing for succession in case of a vacancy in the position of DHS

Secretary. "Notwithstanding chapter 33 of Title 5, the Under Secretary for Management shall serve as the Acting Secretary if by reason of absence, disability, or vacancy in office, neither the Secretary nor Deputy Secretary is available to exercise the duties of the Office of the Secretary." 6 U.S.C.A. § 113 (g)(1). "Notwithstanding chapter 33 of Title 5, the Secretary may designate such other officers of the Department in further order of succession to serve as Acting Secretary." 6 U.S.C.A. § 113 (g)(2).

### III. DISCUSSION

Cuevas-Almonte asserts that the USCG, which is part of DHS, "interdicted the Defendants in international water, ordered them to 'heave to,' shot at the Defendants, took the Defendants into custody, transported them to Puerto Rico," and subsequently transported them to St. Thomas. (ECF No. 75.) According to Cuevas-Almonte, [a]ll of these actions occurred . . . when DHS was headed in violation of the applicable statutory regime and, more importantly, in violation of the Appointments Clause." (ECF No. 75 at 12-13.) Cuevas-Almonte contends that Nielsen's Annex A amended the order of succession but not the grounds governed by Annex A, namely, the order of succession if the Secretary was unavailable to act during a disaster of catastrophic emergency. Thus, since Nielsen resigned as opposed to becoming unavailable during a state of emergency, Cuevas-Almonte contends that the agency improperly relied on the Annex A line of succession when naming McAleenan the then acting secretary. Because Cuevas-Almonte believes that McAleenan improperly assumed the role of Acting Secretary upon Nielsen's resignation, he contends that McAleenan's tenure violated the Appointments Clause. Additionally, since Cuevas-Almonte believes McAleenan improperly assumed the role of Acting Secretary, Cuevas-Almonte claims that McAleenan also did not have the authority to appoint Wolf as Acting Secretary. Therefore, Wolf's tenure as Acting Secretary was invalid and in violation of the Appointment clause as well. Because Cuevas-Almonte believes that McAleenan and Wolf's tenure as Acting Secretary violated the Appointment Clause, Cuevas-Almonte argues that all agency action during their tenures should be invalidated, including the Coast-Guard's interdiction and subsequent arrest of the defendants in this case. *See* ECF No. 75 at 23.

The Government argues that Cuevas-Almonte's Appointment Clause challenge is unclear since his legal analysis addresses whether the Acting DHS Secretaries acted validly pursuant to the HSA, not whether they were nominated and confirmed in accordance with the Appointment Clause, which is unrelated to the HSA succession procedures. (ECF No. 84 at 4.) Moreover, the Appointment Clause was not violated because it does not require that a person who acts temporarily as DHS Secretary must be appointed in the manner of a principal officer. The Government also maintains that Nielsen invoked her authority under 6 U.S.C. § 113(g)(2), making valid McAleenan's tenure and, consequently, his designation of Wolf as Acting Secretary.

As a preliminary matter, the Court notes that there is no need to consider the validity of Wolf's tenure as Acting Secretary. The agency conduct Cuevas-Almonte challenges all took place during McAleenan's time as Acting Secretary of DHS.[1] Since there is no ratification issue in this case, there is no need to consider the validity of Wolf's appointment or any actions that took place during Wolf's tenure as Acting Secretary.

As for McAleenan, although he was the Acting Secretary when the Coast Guard interdiction took place, the Court also finds it unnecessary to consider whether his tenure as Acting Secretary of DHS violated the HSA and thereby resulted in an Appointments Clause violation. Even assuming arguendo that McAleenan assumed the role of Acting Secretary in violation of the Appointments Clause, Cuevas-Almonte is not entitled to the relief sought.

Cuevas-Almonte argues that all DHS action during McAleenan tenure, including acts by individuals in subordinate agencies, are effectively void. Therefore, although there is no allegation that the Coast Guard officers who arrested the defendants on October 24, 2019, were acting under a directive, rule, order, or declaration enacted by McAleenan, Cuevas-Almonte contends that any agency act pursuant to a DHS/USCG regulation was still void and unenforceable simply by virtue of the fact that McAleenan was not a lawful Acting Secretary at the time of his arrest. However, Cuevas-Almonte offers no support for the proposition that

---

[1] Cuevas-Almonte only challenges the validity of the interdiction—including the order to "heave to," the shots fired at the defendants, the arrest of the defendants—and the subsequent transport of the defendants to Puerto Rico and then later St. Thomas. ECF No. 75 at 23. All of these actions took place weeks before Wolf assumed the role of Acting Secretary of DHS on November 13, 2019.

an unlawful appointment of an agency head renders all acts of the agency and its subordinate agencies unenforceable.[2] To accept the proposition that all agency action, including acts of lower-level officials relying on prior lawful delegations of agency authority, is invalid simply because of a technical deficiency would undermine the very foundation of the administrative state. Actions by an unlawfully appointed official may be rendered void, but agencies, particularly agencies responsible for national security, continue to operate as an arm of the Federal Government in the absence of an agency head. *See Nw. Immigrant Rts. Project v. U.S. Citizenship & Immigr. Servs.*, 496 F. Supp. 3d 31, 59 (D.D.C. 2020) ("[B]ecause the Secretary delegated the authority to issue Department rules in 2003, that power is not vested exclusively in the Secretary and is therefore not the type of action that is voided."); *Cf. Cmty. Fin. Servs. Assoc' of Am. v. Consumer Fin. Prot. Bureau*, 51 F. 4th 616, 642 (5th Cir.) (explaining that the remedy for unlawful appointments is invalidating the actions that flow directly from the officer's lack of authority to take the challenged action).

While Cuevas-Almonte points to several cases where courts found that an injunction on certain agency action was likely in light of the court's conclusion in those cases that the official's appointment was unlawful, the proposed injunctions were limited to invalidating specific actions that required the appointed official's discretion or approval.[3] Here, we have a fundamentally different situation. Cuevas-Almonte points to no specific action by the Acting Secretary that is relevant in this case. The Coast Guard agents were acting under authority expressly provided to the officers by statute, *see* 14 U.S.C. § 522, and there is no evidence that the agents in this case relied on a new rule, regulation, or directive implemented during McAleenan's tenure to carry out the interdiction, arrest, or transport of

---

[2] While Cuevas-Almonte refers to cases where the courts have invalidated the actions of the unlawfully appointed official, *see* ECF No. 75 at 22 (citing *Ryder v. United Staes*, 515 U.S. 177 (1995); *Noel Canning v. N.L.R.B.*, 705 F.3d 490 493 (D.C. Cir. 2013), *aff'd* 573 U.S. 513 (2014); *United States v. Providence Journal Co.*, 485 U.S. 693 (1988), he points to no case supporting the proposition that an invalid appointment necessarily renders the acts of subordinate officials and employees invalid simply by virtue that that they fall below the unlawfully appointed official in the agency hierarchy. The only way the invalidity of an official's appointment has a daisy chain effect is where the lower-level official is relying on an action by the unlawfully appointed official to carry out their duties. That is not the circumstances we have here.

[3] *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1 (D.D.C. 2020) and *Casa de Maryland, Inc. v. Wolf*, 486 F. Supp. 3d 928 (D. Md. 2020) are the two preliminary injunction cases Cuevas-Almonte refers to in his briefs.

the defendants. In fact, the Coast Guard officers' decision to interdict and ultimately arrest the defendants did not require approval or review by the Secretary of DHS because prior lawfully appointed officials had already delegated such authority to the Coast Guard well before McAleenan's tenure as Acting Secretary.[4] *See* 14 U.S.C. §§ 504-505;[5] 33 C.F.R. § 1.01-1 (effective Dec. 31, 1948);[6] 33 C.F.R. § 1.01-80 (effective June 18, 2002); 33 C.F.R. § 1.01-85. Therefore, McAleenan's purportedly unlawful appointment had no effect, let alone prejudice, on the defendants in this case.

Nevertheless, Cuevas-Almonte argues that when it comes to an Appointments Clause violation, there is no need to show prejudice. *See* ECF No. 75 at 22 (citing *Cirko on behalf of Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148, 152 (3d Cir. 2020). While it is true that no prejudice need be shown in the typical Appointments Clause case, that is because the injured party is directly challenging the actions of the unlawfully appointed official.[7] Where the unlawful

---

[4] The Court also notes that not only was the Commandant of the Coast Guard delegated the relevant authority at issue here, Admiral Karl Schultz was appointed by the President and then confirmed by the Senate as Commandant of the Coast Guard in May of 2018. *See* PN1706—Vice Adm. Karl L. Schultz—Coast Guard, https://www.congress.gov/nomination/115th-congress/1706/actions. Schultz continued to lead the Coast Guard as Commandant from 2018 through all relevant times pertinent to this prosecution including the interdiction and arrest of Cuevas-Almonte and his co-defendant.

[5] 14 U.S.C. § 505 ("All powers and functions conferred upon the Coast Guard, or the Commandant, by or pursuant to this title or any other law shall, unless otherwise specifically stated, be executed by the Commandant").

[6] Final authority for the performance within the confines of his district of the functions of the Coast Guard, which in general terms are maritime law enforcement, saving and protecting life and property, safeguarding navigation on the high seas and navigable waters of the United States, and readiness for military operations, is delegated to the District Commander by the Commandant. In turn delegations of final authority run from the District Commander to commanding officers of units under the District Commander for the performance of the functions of law enforcement, patrol of marine regattas and parades, and the saving of life and property which come within the scope of their activities. 33 C.F.R. § 1.01-1

[7] For instance, in *Cirko on behalf of Cirko*, the appointment clause challenge involved the administrative law judges (ALJs) presiding over the plaintiffs' case. Thus, since it was the ALJ's conduct at issue, the alleged unlawful appointees' influence over the Plaintiffs' respective cases was obvious. Similarly, in *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1 (D.D.C. 2020); *Batalla Vidal v. Wolf*, 501 F. Supp. 3d 117 (E.D.N.Y. Nov. 14, 2020); *Casa de Maryland, Inc. v. Wolf*, 486 F. Supp. 3d 928 (D. Md. 2020), the plaintiffs were challenging specific acts of the purportedly unlawfully appointed official. Specifically, in *Cuccinelli*, the plaintiff challenged the enforceability of a directive issued by the unlawfully appointed acting Director of the United States Citizenship and Immigration Services. *See Cuccinelli*, 442 F. Supp. 3d at 9. In *Batalla Vidal*, plaintiffs argued that Acting Secretary Wolf was unlawfully appointed and specifically challenged Secretary Wolf's issuance of a memorandum regarding the Deferred Action for Childhood Arrivals ("DACA") program. *See* 501 F. Supp. 3d at 122. And in *Casa de Maryland, Inc.*, plaintiffs challenged Acting Secretary Wolf's promulgation of final rules. *See*

appointment is significantly attenuated from the challenged conduct, however, the Court believes an additional showing is necessary to demonstrate that the official's action affected the citizen in some way. For instance, in *United States v. Smith*, the Fourth Circuit determined that even if the President's designation of Matthew Whitaker as the Acting Attorney General violated the Appointments Clause, Whitaker's connection to the defendant's case was too insignificant on its own to entitle the defendant to relief where there was no evidence that Whitaker affected or influenced the agency's handling of the defendant's case. 962 F.3d 755, 766 (4th Cir. 2020) ("Smith must show that Whitaker's tenure somehow affected his proceeding."). In other words, when relying on a root-to-branch theory in an Appointments Clause case, the defendant has the additional burden of showing that the unlawfully appointed official had at least some effect or influence on the specific agency action at issue. The Third Circuit agreed with the reasoning in *Smith* as well, and similarly concluded a showing of prejudice was necessary when the defendant raised the validity of the Attorney General's appointment but challenged the enforceability of the actions of lower-level officials in the agency. *United States v. Brooks*, 841 Fed. App'x 346 (3d Cir. Dec. 29, 2020). The Court believes this approach is appropriate under the circumstances. Were the Court to adopt Cuevas-Almonte's approach here, this particular alleged Appointments Clause violation would result in every single act of every employee or official in the following agencies to be invalid during the tenure of Acting Secretary McAleenan: United States Coast Guard, United States Citizenship and Immigration Services (USCIS), U.S. Customs and Border Protection, the Cybersecurity and Infrastructure Security Agency, Federal Emergency Management Agency (FEMA), the Federal Law Enforcement Training Center, United States Immigration and Customs Enforcement ("ICE"), U.S. Secret Service, the Transportation Security Administration. According to Cuevas-Almonte, no decision by a single member of those respective agencies should have any force or effect, regardless of whether the DHS Secretary

---

486 F. Supp. 3d at 950. In contrast here, Cuevas-Almonte is challenging agency action (either regulations, the delegation of authority, or the Coast Guard officers' actions themselves) that the appointed official had no involvement in. Accordingly, the Court finds the instant case is more in line with the Third and Fourth Circuit decisions requiring some showing of prejudice before an agency head's unlawful appointment would invalidate the action of lower-level officials within the agency, particularly where the actions were not based on an appointment or act by the head of the agency.

ever acted on a particular issue concerning that agency. This is nonsensical. Because the Court concludes that, even if McAleenan unlawfully assumed the role of Acting Secretary, it is only *his* actions as Secretary that are rendered void, and therefore, Cuevas-Almonte must show that Secretary McAleenan's actions affected the interdiction, arrest, and or transportation of the defendants in some way in order for the officers' conduct to be void. Since Cuevas-Almonte makes no such allegation that the agents acted upon an action, directive, order, memorandum, rule, or policy statement issued by McAleenan, the Court finds no basis for rendering the Coast Guard officers interdiction, arrest, and transport of Cuevas-Almonte and his co-defendant unlawful or void.

In any event, Cuevas-Almonte is unclear about the practical effect of finding the Coast Guard officers' conduct here invalid. As the Government points out in its response, the United States Attorney's Office—an entity a part of the Department of Justice—is prosecuting the case, and the defendants are currently in the custody of the Bureau of Prisons, which is also not a DHS agency. Therefore, even if the Court were to grant the requested relief, Cuevas-Almonte would remain in custody, and his case would proceed as scheduled. Furthermore, the Government notes that Cuevas-Almonte may be seeking to suppress the evidence, but Cuevas-Almonte never makes such a request in the instant motion.

Moreover, a request to suppress at this juncture would be fruitless. The deadline to file substantive motions has expired, and when looking at the merits of the case, suppression of evidence surrounding the interdiction and arrest would be inappropriate. Suppression is not mandatory, and a request for such should be granted "only where its deterrence benefits outweigh its substantial social costs." *Penn. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 363 (1998) (internal quotation marks omitted). Here, there would be no deterrence benefit. *See Herring v. United States*, 555 U.S. 135, 141 (2009) (emphasizing that the purpose of the exclusionary rule is "deterring Fourth Amendment violations in the future"). The Coast Guard officers, in this case, would have no reason to know if the Secretary of DHS was unlawfully appointed and thus, under Cuevas-Almonte's theory, that all their actions were unenforceable. Therefore, suppression of the evidence in this instance would not likely deter the officers from interdicting or arresting individuals under these circumstances again in the

*United States v. Cuevas-Almonte*
Case No. 3:19-cr-0076
Memorandum Opinion
Page 11 of 11

future, seeing as there would be virtually no way for the officers to know that the circumstances existed. *See Davis v. United States*, 564 U.S. 229, 249 (2011) (concluding that excluding evidence is not appropriate where there is no law enforcement officer misconduct and substantial social costs).

    Therefore, with the premises considered, Defendant Cuevas-Almonte's instant motion is denied. An accompanying order of even date will follow.

**Date:**  May 1, 2024                                     */s/ Robert A. Molloy*
                                                                                **ROBERT A. MOLLOY**
                                                                                **Chief Judge**