# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 3:19-cr-0076 |
| | ) |
| **CARLOS ALBERTO CUEVAS-ALMONTE** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**ATTORNEYS:**

**DELIA L. SMITH, UNITED STATES ATTORNEY**
**ADAM F. SLEEPER, ASSISTANT UNITED STATES ATTORNEY**
UNITED STATES ATTORNEY'S OFFICE
ST. THOMAS, U.S. VIRGIN ISLANDS
  *FOR THE UNITED STATES OF AMERICA*

**JOSEPH A. DIRUZZO, III, ESQ.,**
DIRUZZO & COMPANY
FT. LAUDERDALE, FLORIDA
  *FOR DEFENDANT CARLOS ALBERTO CUEVAS-ALMONTE*

## MEMORANDUM OPINION

**MOLLOY, Chief Judge.**

**BEFORE THE COURT** is Defendant Carlos Alberto Cuevas-Almonte's ("Cuevas-Almonte") Motion to Dismiss [the Indictment]. (ECF No. 130.) For the reasons stated below, the Court will deny the defendant's instant motion.

### I. FACTUAL AND PROCEDURAL HISTORY

On October 24, 2019, a United States Customs and Border Protection ("CBP") air unit detected a Go-Fast vessel ("GFV") approximately 75 nautical miles south of Cabo Rojo, Puerto Rico, in international waters, heading northeast at 12 knots. (ECF No. 1-1, Molina Aff. ¶ 3.) CBP decided to launch the United States Coast Guard Cutter Diligence ("Diligence") to intercept the suspect vessel. When Diligence approached the GFV, the Coast Guard Cutter energized its lights and loud hailer and ordered the suspect vessel to heave to; however, the vessel did not comply. *Id.* at ¶¶ 4-5. The agents onboard Diligence subsequently observed

two persons on the GFV jettisoning unidentified bales. As the suspects continued discarding the bales, the agents began firing warning shots near the GFV. *Id.* at ¶ 5. The GFV eventually became dead in the water 33 nautical miles south of Cabo Rojo, Puerto Rico. The agents on-board Diligence then proceeded to establish control of the GFV. *Id.* Shortly thereafter, the persons on board the GFV pulled the plugs of the suspect vessel causing the vessel to take on water. *Id.* at ¶ 6. For their safety, the law enforcement agents removed the two individuals from the GFV, one of which was Cuevas-Almonte. *Id.*

The agent then proceeded to ask Cuevas-Almonte and the other man on the vessel, Pedro Ramos-Guerra ("Ramos-Guerra"), a series of right to board questions. When asked who the master of the vessel was, both men answered affirmatively that they were the master of the vessel. (ECF No. 1-1.) However, when asked whether either suspect wished to make a claim of nationality for the vessel, neither responded. *See id.*

Around the time the suspects were questioned, the agents recovered 10 bales of what was later determined to be cocaine. In total, the agents recovered approximately 500 kilograms of cocaine from the suspect vessel the night of the incident. *See id.*

On November 21, 2019, a grand jury returned an indictment charging Cuevas-Almonte with conspiracy to possess a controlled substance with intent to distribute while on board a vessel, in violation of Title 46, United States Code, Sections 70502(c)(1)(A), 70503(a)(1), 70504(b)(2), and 70506(a) and (b) as well as possession of a controlled substance with intent to distribute while on board a vessel, in violation of Title 46, United States Code, Sections 70502(c)(1)(A), 70503(a)(1), 70504(b)(2), 70506(a) and Title 18, United States Code, Section 2. (ECF No. 1.) The Indictment also charged Cuevas-Almonte with destroying property subject to forfeiture. *Id.* On October 8, 2020, the Government filed the Superseding Indictment wherein the grand jury charged Cuevas-Almonte with the same offenses as charged in Count One and Two of the Original Indictment but replaced the charge in Count Three with failure to heave to. (ECF No. 93.)

On February 2, 2022, Defendant Cuevas-Almonte filed the instant motion to dismiss (ECF No. 130.) The Government filed their opposition on March 23, 2022. (ECF 136.) While the motion was pending, the Government filed a notice of supplemental authority informing

the Court that the United States Court of Appeals for the First Circuit vacated its decision in *United States v. Davila-Reyes*, 38 F.4th 288 (1st Cir. 2022)—the case on which Cuevas-Almonte relied in support of his instant motion. (ECF No. 139.) Given that Cuevas-Almonte's primary authority had since been vacated, the Court ordered Cuevas-Almonte to notify the Court whether he intend[ed] to maintain his argument that the MDLEA is unconstitutional and, if so, file "a supplemental memorandum of law, with citations to precedential or persuasive authority precisely explaining how the MDLEA is unconstitutional." (ECF No. 140.) In that same Order the Court also directed the Government to file a response to Cuevas-Almonte's supplemental briefing. *See id.* On October 25, 2022, Cuevas-Almonte informed the Court of his intention to maintain his argument regarding the unconstitutionality of the MDLEA, and on October 28, 2022, Cuevas-Almonte filed his supplemental memorandum of law. (ECF No. 142.) The Government filed its responsive supplemental brief on November 16, 2022. (ECF No. 143.). The matter being fully briefed, is now ripe for review.

## II.    DISCUSSION
### A.  ARGUMENTS RAISED IN THE MOTION TO DISMISS
#### 1. The *Davila-Reyes* Decision was vacated and is inapplicable to this case

Pursuant to Fed. R. Crim. P. 12(b)(1), "[a] party may raise by pretrial motion any defense, objection or request that the court can determine without a trial on the merits." In addition, Rule 12(b)(1) provides that "[a] motion that the court lacks jurisdiction may be raised at any time while the case is pending." Fed. R. Crim. P. 12(b)(2).

Cuevas-Almonte attempts to argue that the Indictment in this case should be dismissed because the Maritime Drug Law Enforcement Act ("MDLEA") exceeds Congress' authority under Article I of the Constitution because he believes the MDLEA's definition of a stateless vessel conflicts with international law. The MDLEA states that "[w]hile on board a *covered vessel*, an individual may not knowingly or intentionally… manufacture or distribute, or possess with intent to manufacture or distribute, a controlled substance." 46 U.S.C. § 70503(a)(1) (emphasis added). A "covered vessel" includes "a vessel subject to the jurisdiction of the United States," *id.* § 70503(e)(1), which includes "a vessel without

nationality." *Id.* § 70502(c)(1)(A). Under the MDLEA, there are four ways for a vessel to be deemed "without nationality," and therefore, stateless. They are as follows:

(A) a vessel aboard which the master or individual in charge makes a claim of registry that is denied by the nation whose registry is claimed;

(B) a vessel aboard which the master or individual in charge fails, on request of an officer of the United States authorized to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel;

(C) a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality; and

(D) a vessel aboard which no individual, on request of an officer of the United States authorized to enforce applicable provisions of United States law, claims to be the master or is identified as the individual in charge, and that has no other claim of nationality or registry under paragraph (1) or (2) of subsection (e).

*Id.* § 70502(d)(1).

When considering whether a statute passes constitutional muster, the Court must begin from the premise that "[e]very legislative act is to be presumed to be a constitutional exercise of legislative power until the contrary is clearly established." *Close v. Glenwood Cemetery*, 107, U.S. 466, 475 (1883); *United States v. Jamison*, 647 F. Supp. 2d 381, 383 (D. Del. 2009) ("Federal statutes are presumed constitutional and will only be invalidated on a 'plain showing' that Congress exceeded its authority under the United States Constitution.") (citing *United States v. Morrison*, 529 U.S. 598, 607 (2000) and *United States v. Pendleton*, Crim No. 08-111, 2009 WL 330965, at *3 (D. Del. Feb. 11, 2009)). Here, Cuevas-Almonte fails to meet this exceptionally high standard.

To support his argument, Cuevas-Almonte relies primarily, if not exclusively, on the First Circuit's January 20, 2022 decision in *United States v. Davila-Reyes*, 23 F.4th 153 (1st Cir. 2022). However, shortly after Cuevas-Almonte filed the instant motion, the First Circuit vacated the *Davila-Reyes* opinion Cuevas-Almonte now relies upon. *United States v. Davila-Reyes*, 38 F.4th 288, 288 (1st Cir. 2022) (vacating the January 20, 2022 decision). Moreover, the First Circuit has since taken the *Davila-Reyes* case *en banc*, and affirmed the convictions

in that case on "narrow, record-based grounds that bypass[ed] many of the broader questions of international and federal constitutional law," because "those questions touch[ed] on sensitive issues of U.S. foreign relations and national power" that the First Circuit concluded were not necessary to rendering a decision in that case. *United States v. Davila-Reyes*, 84 F.4th 400, 402 (1st Cir. 2023). Given the First Circuit's vacatur of the January 20, 2022 decision, and the Court of Appeals subsequent limited *en banc* decision, the *Davila-Reyes* case is of virtually no persuasive value. Accordingly, the Court is unconvinced that *Davila-Reyes* provides a basis for Cuevas-Almonte to obtain relief here. Furthermore, due to the cursory nature of the Cuevas-Almonte's motion,[1] which does not contain any independent analysis or argument pertaining to any specific statutory section or reference to any caselaw apart from the *Davila-Reyes* vacated panel opinion, the Court finds Cuevas-Almonte's motion is unsupported.

Nevertheless, even assuming *Davila-Reyes* were still good law, Cuevas-Almonte's argument would still fail. Were the January 20, 2022 decision still in effect, *Davila-Reyes* would have only struck down the portions of the MDLEA that the Court determined were in conflict with international law. As noted earlier, the MDLEA provides four distinct ways that a vessel may be deemed stateless. In its now vacated opinion, the First Circuit determined the only definition that conflicted with international norms for statelessness was 46 U.S.C. § 70502(d)(1)(C), which deems a "vessel without nationality" if "the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality." *See Davila-Reyes*, 23 F.4th at 157-58 ("We now hold that Congress exceeded its authority under *158 Article I of the Constitution in enacting § 70502(d)(1)(C) of the MDLEA.").

---

[1] While at first glance Cuevas-Almonte's motion might give an initial impression that his argument is thorough and well researched, after a more thorough review it quickly becomes evident that his motion simply relies on arguments made in other cases without any deeper analysis. (ECF No. 130 at 6, n.3) (referring to the entirety of the instant motion, Attorney DiRuzzo notes that "[a] substantial portion of the following was taken from the briefing *(block quotations removed for ease of reading)* in *Davila-Reyes*. (emphasis added). Notwithstanding that Cuevas-Almonte is attempting to make an as-applied challenge, he fails to meaningfully grapple with the particular factual circumstances of this case.

That kind of stateless vessel defined under section 70502(d)(1)(C) is not at issue in this case. According to the Government, neither of the defendants on board the suspect vessel made any claim or assertion indicating the vessel's registry or its nationality. When the federal agents specifically asked Cuevas-Almonte and Ramos-Guerra whether either of them wanted to make a claim of nationality for the vessel, neither defendant answered. (ECF Nos. 1-1 & 136 at 2.) Accordingly, 70502(d)(1)(C)'s definition of statelessness does not apply since there was no claim of nationality or registry for the vessel.[2] Therefore, the January 20, 2022 holding in *Davila-Reyes* is irrelevant for the purposes of this case, and as such, Cuevas-Almonte's argument would fail even if the Court were to adopt the First Circuit's since vacated reasoning here.

Despite the defendants' failure to make a verbal claim of registry or nationality, Cuevas-Almonte nevertheless argues that section 70502(d)(1)(C) is still implicated in this case. *See* ECF Nos. 130 at 2 and 142 at 2. Cuevas-Almonte first highlights the fact that he is a Dominican Republic national and Ramos-Guerra is a Venezuelan national. Cuevas-Almonte then notes that both he and Ramos-Guerra claimed they were the master of the suspect vessel. Therefore, given their nationalities, Cuevas-Almonte contends that when he and Ramos-Guerra claimed they were the master of the vessel, they implicitly made a claim of nationality for the vessel as well notwithstanding their subsequent failure to make an express claim of nationality for the vessel when prompted by law enforcement officials. The argument is without merit.

Not only is it unreasonable to presume that a person's claim regarding their own nationality equates to a claim of nationality for the vessel, this theory is prohibited by the plain language of the MDLEA. Under 46 U.S.C. § 70502(e), the only way for the master of the

---

[2] The First Circuit in *Davila-Reyes* did not indicate that the MDLEA's other definitions for vessel without nationality failed to comply with contemporary international law norms. Accordingly, the constitutionality and ultimate validity of the remaining stateless vessel definitions under § 70502(d)(1) were not cast into doubt by the now vacated First Circuit decision. *See Davila-Reyes*, 23 F.4th at 157-58. Therefore, since failure to make a claim of nationality when prompted is still a valid basis even under *Davila-Reyes* to find a vessel stateless, the First Circuit's vacated decision is not even remotely relevant to the facts at issue. *See United States v. Cabezas-Montano*, 949 F.3d 567, 590 (11th Cir. 2020) ("Because the defendants made no claim of nationality, the statelessness of their vessel is clear under subsection (d)(1)(B).").

vessel to make a claim of nationality for the vessel when there are no other indicia of nationality is to make "a *verbal claim* of nationality or registry" as to the vessel itself. *See United States v. Guerro*, 789 Fed. App'x 742, 750 (11th Cir. 2019); *United States v. Edwin Cortes-Tobar*, Crim No. 4:21-CR-305, 2024 WL 1889823, at *3 (E.D. Tex. Apr. 30, 2024); *United States v. Landazuri Arboleda*, 553 F. Supp. 3d 1107, 1114, 1116 (M.D. Fla. 2021). The master's assertion of his own nationality is insufficient. *See United States v. Bolibanto-Espinayo*, Crim. No. 21-481, 2023 WL 5969596, at *3 (D.P.R. Aug. 17, 2023);[3] *cf. United States v. Gruezo*, Case No. 21-CR-20327, 2021 WL 6932169, at *4 (S.D. Fla. Dec. 23, 2021) (finding that where agent testified the report merely noted the master of the vessel's nationality, that was not sufficient to find that the master of vessel had made a claim of nationality for the vessel).[4]

Therefore, since there is no contention that either Cuevas-Almonte or his co-defendant ever made such claim of nationality for the vessel specifically, section 70502(d)(1)(C) could not be at issue here. Accordingly, Cuevas-Almonte could not prevail under the line of reasoning originally set out by the First Circuit in its vacated *Davila-Reyes decision* in light of the facts in the instant case.

### 2. The MDLEA Does Not Violate Cuevas-Almonte's Due Process Rights Under the Fifth Amendment

In addition to Cuevas-Almonte's argument regarding the international law constraints on the MDLEA, he also contends that the MDLEA, as applied to him, violates the

---

[3] In *Bolibanto-Esinayo*, the district court noted that the defendants cited documents which stated the master of the vessel was Columbian and asserted that "'Bolibanto as a master of the vessel did make a claim of nationality and [, therefore,] the vessel is not a stateless vessel.'" 2023 WL 5969596, at *3. The Court then explained the defendants "misconstrue[d] the evidence. Seaman Vázquez stated that Bolibanto claimed Colombia nationality for himself. His statement is devoid of any reference to claims of nationality for the defendants' vessel." *Id.* The district court then proceeded to deny the motion to dismiss.

[4] In any event, even if the Court accepted Cuevas-Almonte's logic, the defendants' supposed claims of nationality would not prevent the law enforcement officers from treating the vessel as stateless. A ship claiming to fly under more than one flag may be treated as stateless. *See United States v. Marin*, 90 F.4th 1235, 1241-42 (9th Cir. 2024). Under Cuevas-Almonte's theory, the vessel was purportedly flying under both a Dominican Republic flag and a Venezuelan flag. Therefore, even if the defendants' mere claims that they were master of the vessel was sufficient to assert a claim of nationality on behalf of the vessel, the conflicting claims nevertheless rendered the vessel stateless. *See United States v. Matos-Luchi*, 627 F.3d 1, 5 (1st Cir. 2010) ("[E]very vessel must sail under the flag of one and only one state; those that sail under no flag or more than one flag enjoy no legal protection.").

Fifth Amendment's due process clause. In particular, he asserts that the Indictment makes "no indication that the [defendants'] vessel and the packages jettisoned were destined for the United States. (ECF No. 130 at 14.) Therefore, the Government has failed to articulate a nexus between the alleged drug trafficking and the United States. Consequently, because of the lack of nexus, Cuevas-Almonte concludes that the exercise of United States jurisdiction over the vessel is arbitrary and fundamentally unfair, and therefore, in violation of the due process clause of the Fifth Amendment.

Although Cuevas-Almonte asserts that the failure to establish a nexus between the United States and the alleged drug trafficking acts raises due process concerns, the Third Circuit along with other federal court of appeals have rejected such contentions. *See United States v. Martinez-Hidalgo*, 993 F.2d 1052, 1056 (3d Cir. 1993) ("[T]he government need not establish a domestic nexus to prosecute offenses under the Maritime Drug Law Enforcement Act..."); *United States v. Perez Oviedo*, 281 F.3d 400, 403 (3d Cir. 2002) (reaffirming that a lack of nexus does not violate the due process clause); *see also United States v. Cabeza-Montano*, 949 F.3d 567, 587 (11th Cir. 2020) ("[T]he MDLEA is a valid exercise of Congress's power under the Felonies Clause as applied to drug trafficking crimes without a "nexus" to the United States) (citations omitted); *United States v. Campbell*, 743 F.3d 802, 809-10 (11th Cir. 2014);[5] Not only does the MDLEA not impose a nexus requirement, the Fifth Amendment does not require it. The Third Circuit has unequivocally stated that there is "*nothing fundamentally unfair* in applying [the MDLEA] exactly as Congress intended—extraterritorially without regard for a nexus between a defendant's conduct and the United States." *Martinez-Hidalgo*, 993 F.2d at 1056. (emphasis added). Therefore, because binding precedent firmly establishes that no nexus is required, the Court rejects Cuevas-Almonte's due process argument as well.

---

[5] In *Campbell*, the Court of Appeals explained that "'we have always upheld extraterritorial convictions under our drug trafficking laws as an exercise of power under the Felonies Clause.' And we have long upheld the authority of Congress to 'extend [] the criminal jurisdiction of this country to any stateless vessel in international waters engaged in the distribution of controlled substances.' Moreover, in *United States v. Estupinan*, we rejected an argument 'that Congress exceeded its authority under the Piracies and Felonies Clause in enacting the [Maritime Drug Law Enforcement Act].'" 743 F.3d at 809-10.

### 3. Cuevas-Almonte's Treaty Power Argument

Cuevas-Almonte's final argument in his initial brief attempts to dissuade the Court from identifying an alternative constitutional basis for the enactment of the MDLEA in the event the Court is persuaded by the reasoning in *Davila-Reyes*. Specifically, Cuevas-Almonte focuses on Congress' Treaty power. Cuevas-Almonte argues that while the treaty power gives Congress the authority to "act beyond its otherwise enumerated powers" when it relies on authority pursuant to a valid treaty, there is no indication that Congress relied on any authority provided by treaty to enact the MDLEA. As such, Cuevas-Almonte contends that the treaty power cannot be the constitutional basis for the enactment of the MDLEA.

The Court need not address Cuevas-Almonte's treaty argument given that the Third Circuit has already concluded that the MDLEA provision was properly enacted pursuant to the Piracies and Felonies clause of the Constitution.[6] *See Martinez-Hidalgo*, 993 F.2d at 1056; *United States v. Ledesma-Cuesta*, 347 F.3d 527, 531-32 (3d Cir. 2003) ("Congress had authority to enact [the MDLEA] pursuant to its constitutional power to[] 'define and punish Piracies and Felonies committed on the high seas, and Offenses against the Law of Nations.'") (quoting *Martinez-Hidalgo*, 993 F.2d at 1056 (quoting U.S. Const. art. 1, § 8, cl. 10)) (internal quotation marks omitted)). Congress needed no other constitutional authority to enact the statutory provision in question. Accordingly, Cuevas-Almonte's argument provides no basis for relief.

### B. NEW ARGUMENTS RAISED IN THE SUPPLEMENTAL MEMORANDUM OF LAW

In response to the Court's order to submit a supplemental memorandum of law with citations to precedential or persuasive authority precisely explaining how the MDLEA is unconstitutional, Cuevas-Almonte submitted his memorandum of law regurgitating his *Davila Reyes* argument while also raising the following new arguments: (1) "The MDLEA Violates the Sixth Amendment;" (2) "The MDLEA Implicates this Court's Subject Matter Jurisdiction;" (3) "The Protective Principle, Under International Law, Does Not Supply

---

[6] Other courts of appeals have also stated that the MDLEA is a valid exercise of Congress' authority under the Piracies and Felonies clause. *United States v. Davis*, 905 F.2d 245, 248 (9th Cir. 1990); *United States v. Aikins*, 946 F.2d 608, 613 (9th Cir. 1990); *United States v. Alarcon Sanchez*, 972 F.3d 156, 169–70 (2d Cir. 2020); *United States v. Cabeza-Montano*, 949 F.3d 567, 587 (11th Cir. 2020).

*United States v. Cuevas-Almonte*
Case No. 3:19-cr-0076
Memorandum Opinion
Page 10 of 17

Jurisdiction for the Use of the MDLEA;" and (4) "Section 70502(d)(1) Does Not Cover a Claim of Nationality." (ECF No. 142.)

The Government submitted its response to Cuevas-Almonte's supplemental memorandum of law arguing that: (i) "The Court, not the jury, determines whether the vessel was subject to the jurisdiction of the United States;" (ii) "The inquiry into whether a vessel was subject to the jurisdiction of the United States does not relate to this Court's subject matter jurisdiction;" and (iii) "Title 46, United States Code, Section 70502(d)(1)(C) is not applicable to this case, and even if it were, the defendant's statutory interpretation and constitutional arguments regarding that provision lack merit." The Court will address Cuevas-Almonte's new arguments.

### 1. *The MDLEA Implicates Subject Matter Jurisdiction and Violates the Sixth Amendment*

Cuevas-Almonte argues for the first time in his supplemental memorandum of law that Section 70504(a) violates the Sixth Amendment because "MDLEA jurisdictional facts . . . must be decided by a jury" and implicates this Court's subject-matter jurisdiction. Cuevas-Almonte does not argue that the Court lacks subject-matter jurisdiction in this case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998) ("For a court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires.").

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law." U.S. Const. amend. VI. Subject-matter jurisdiction is "the courts' statutory or constitutional *power* to adjudicate the case." *Steel Co.*, 523 U.S. at 89. "Subject-matter limitations on federal jurisdiction serve institutional interests. They keep the federal courts within the bounds the Constitution and Congress have prescribed." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999).

"The District Court of the Virgin Islands derives its jurisdiction from Article IV, § 3 of the United States Constitution, which authorizes Congress to regulate the territories of the United States." *United States v. Gillette*, 738 F.3d 63, 70 (3d Cir. 2013). "The District Court of the Virgin Islands shall have the jurisdiction of a District Court of the United States, including,

but not limited to, the diversity jurisdiction provided for in section 1332 of Title 28 and that of a bankruptcy court of the United States." 48 U.S.C. § 1612(a). "The District Court of the Virgin Islands shall have jurisdiction of offenses under the laws of the United States, not locally inapplicable, committed within the territorial jurisdiction of such courts, and jurisdiction, concurrently with the district courts of the United States, of offenses against the laws of the United States committed upon the high seas." 18 U.S.C. § 3241.

Cuevas-Almonte argues that "[t]he MDLEA's 'vessel subject to the jurisdiction of the United States' requirement, a preliminary question, is not waivable because it implicates subject-matter jurisdiction." He contends that Section 70504(a) "is jurisdictional" because: (1) "Congress used the word 'jurisdictional,'" which is a "label" that "indicates that Congress intended the jurisdictional component to confer subject matter jurisdiction;" (2) "Section 70504(a) is a question for the Court and not an offense element" and, as the court stated in *Miranda*, Section 70504(a) "operates precisely in the nature of a condition on subject-matter jurisdiction;" and (3) "[t]he statutory context here indicates that Congress intended to reduce 'friction with foreign nations.'" (ECF No. 142) (quoting *Miranda*, 780 F.3d at 1193).[7]

The Government notes the current circuit split concerning the issue whether Section 70504(a) limits the court's subject-matter jurisdiction, comparing "*United States v. Prado*, 933 F.3d 121, 132-51 (2d Cir. 2019) (does not address subject matter jurisdiction); *United States v. Gonzalez*, 311 F.3d 440, 444 (1st Cir. 2002) (same), with *United States v. Miranda*, 780 F.3d 1185, 1191 (D.C. Cir. 2015) (addresses subject matter jurisdiction); *United States v. De La Garza*, 516 F.3d 1266, 1271 (11th Cir. 2008) (same); *United States v. Bustos-Useche*, 273 F.3d 622, 626 (5th Cir. 2001) (same)." The Government argues that "[t]he inquiry into whether a vessel was subject to the jurisdiction of the United States does not relate to this Court's subject-matter jurisdiction," for the reasons explained by the Second Circuit Court of Appeals:

> (i) A general provision of United States law, 18 U.S.C. § 3231, which defines the subject matter jurisdiction of the federal courts in relation to criminal statutes, confers subject matter jurisdiction on the federal courts for such a prosecution. (ii) The Supreme Court, recognizing the many different senses of

---

[7] Although Cuevas-Almonte cited *United States v. De La Garza*, 516 F.3d 1266 (11th Cir. 2008), *United States v. Bustos-Useche*, 273 F.3d 622 (5th Cir. 2001), and *United States v. Mosquera-Murillo*, 902 F.3d 285 (D.C. Cir. 2018) in support of his argument that the MDLEA implicates subject-matter jurisdiction, he failed to discuss those cases or explain how each supports his argument.

> the word "jurisdiction," has repeatedly warned against construing provisions that limit a statute's coverage as references to subject matter jurisdiction unless that meaning was "clearly state[d]" in the statute. *See Arbaugh*, 546 U.S. at 515-16, 126 S.Ct. 1235. (iii) The natural meaning of the words of the statute, if they are read in context in the manner in which the various provisions and definitions fit together, make clear that the term "vessel subject to the United States" specifies the reach, or coverage, of the statute and does not in any way address the jurisdiction of the court. (iv) Interpreting the phrase as a limitation *on the court's jurisdiction*, rather than *on the reach of the statute*, would give the prohibitory clauses a highly expansive and improbable meaning that would affront the sovereignty of other nations. (v) The numerous federal statutes that confer subject matter jurisdiction on federal courts uniformly express that concept through very different formulations. (vi) Perhaps most important, the terms "subject to the jurisdiction of the United States" and "vessel subject to the jurisdiction of the United States" appear repeatedly in the MDLEA and other provisions of the same Title 46 (which governs Shipping), in contexts where those phrases refer unmistakably to the reach of United States laws (as exercises of legislative jurisdiction) and not to the jurisdiction of the courts. (vii) The decisions of other courts that have treated the provision as a limitation on court jurisdiction have either not recognized that it could have another meaning or have not recognized that the same phrase is used incompatibly with their interpretation repeatedly throughout title 46, as well as in a parallel provision of the very same MDLEA.

*United States v. Prado*, 933 F.3d 121, 133–34 (2d Cir. 2019).

Neither *Miranda* nor *Prado* involved a claim that Section 70504(a) is unconstitutional because it violates the Sixth Amendment. Both cases involved defendants who pleaded guilty to drug-related charges and who claimed that their charged offenses did not involve vessels subject to the jurisdiction of the United States. *Miranda*, 780 F.3d at 1191 (addressing defendants, nationals of Colombia, who moved to dismiss the indictment on the ground that their vessels were not "without nationality" because "both boats were in Colombian waters when captured" and not "on the high seas," as they alleged is required by the statute to qualify as a vessel without nationality); *Prado*, 933.F.3d at 127 (addressing defendants, nationals of Ecuador, who moved to dismiss the indictment on the ground that their vessel was not "without nationality" because it had an image of the Ecuadorian flag and there was no evidence that the officers inquired of them as to the nationality or registration of the

*United States v. Cuevas-Almonte*
Case No. 3:19-cr-0076
Memorandum Opinion
Page 13 of 17

vessel or communicated with the registry of Ecuador to determine whether the vessel was registered).

In *Miranda*, on which Cuevas-Almonte relies exclusively for his argument that Section 70504(a) implicates subject-matter jurisdiction, defendants who pleaded guilty to drug conspiracy charges argued "on appeal that the MDLEA is unconstitutional as applied to their conduct," *Miranda*, 780 F.3d at 1186, because "their charged offense did not involve 'vessel[s] subject to the jurisdiction of the United States,'" which the court concluded "goes to the district court's subject matter jurisdiction." *Id.* at 1191. The court rejected the defendants' argument that "a vessel is 'without nationality' only when on the high seas" and not in Colombian territorial waters, noting that the statute describes a vessel without nationality "in a manner that makes no reference to the situs of a vessel when seized." *Id.* at 1197. The court concluded that "Congress did not intend to establish a 'jurisdictional element,'" namely, it did not intend to "treat the relevant condition as an element of the offense to be found by a jury," but noted that "allocation of the issue to the court rather than the jury gives rise to a possible Sixth Amendment claim (regardless of whether the issue goes to subject-matter jurisdiction), *see Gonzalez,* 311 F.3d at 444, but appellants raise no such claim here." *Id.* at 1195–96. The court agreed with the positions of the Eleventh Circuit in *De La Garza* and the Fifth Circuit in *Bustos-Useche*, concluding that, "under § 70504(a), the question whether a vessel is 'subject to the jurisdiction of the United States' is a matter of subject-matter jurisdiction," *Miranda*, 780 F.3d at 1192, and finding that, "[o]n the merits of the issue, however, appellants' statements of stipulated facts fully support the district court's conclusion that the relevant vessels were subject to the jurisdiction of the United States." *Id.* at 1186.

In *Prado*, upon the defendants' motion dismiss the indictment, the district court conducted a hearing to determine whether the vessel at issue was stateless and denied the motion concluding that the vessel was stateless. *Prado*, 933 F.3d at 127. Thereafter, Defendants entered pleas of guilty. *Id.* The Second Circuit explained that "[i]f an indictment was premised on the vessel having been stateless and neither side offered any evidence on that subject, the court would have no basis for concluding that the vessel was subject to the

jurisdiction of the United States and would be compelled to dismiss the indictment." *Id.* at 129–30. The Second Circuit vacated the district court's finding that the vessel was subject to the jurisdiction of the United States "[b]ecause the evidence presented by the government to the court in support of the preliminary determination required by § 70504 was legally insufficient to support a finding that the go-fast was without nationality and subject to the jurisdiction of the United States." *Id.* at 132. The Second Circuit then addressed the question of whether "the government's failure to demonstrate that the vessel was without nationality mean[t] that the court was without subject matter jurisdiction," *id.*, concluding that the MDLEA did not displace, supersede or limit the statutory law governing the subject-matter jurisdiction of federal courts over federal criminal prosecutions. *Id.* at 135. The court explained that it found persuasive the First Circuit finding in *Gonzalez* "that the MDLEA's reference [to jurisdiction in Section 70504(a)] poses the question whether its prohibition on drug possession extends to the vessel in question – not whether a prosecution under the statute falls within the subject matter jurisdiction of the federal courts." *Id.* at 133. The Second Circuit noted: "It is true, as Judge Boudin observed in *Gonzalez*, 311 F.3d at 444, that by allocating 'jurisdictional issues' to the judge, 'Congress [ ] introduced a possible Sixth Amendment objection to the statute.' But as of 1996, the Supreme Court had made no such ruling, and there is no reason to suppose that Congress believed it could not, consistent with the Constitution, give the court the sole authority to determine a jurisdictional element." *Id.* at 139.[8]

---

[8] The Second Circuit addressed Judge Boudin's concern in *Gonzalez* about "a possible Sixth Amendment objection to the statue," *Prado*, 933 F.3d at 139, in a footnote, stating:
Judge Boudin's concern came closer to realization in 2016, when the Supreme Court rendered decisions in *Torres* and *Taylor v. United States*, --- U.S. ----, 136 S.Ct. 2074, 195 L.Ed.2d 456 (2016). In *Torres*, the Court asserted in dictum that jurisdictional elements, like offense elements, must be "proved to a jury beyond a reasonable doubt." *Torres*, 136 S.Ct. at 1630. (The assertion was dictum because it had no bearing on the Court's decision.) Then in *Taylor*, the Court stated, "[T]he Government in a Hobbs Act prosecution must prove beyond a reasonable doubt that the defendant engaged in conduct that satisfies the Act's commerce element, but the meaning of that element is a question of law." *Taylor*, 136 S.Ct. at 2080. This statement was also dictum, which had no effect on the judgment, as the government *had* proved the commerce element beyond reasonable doubt in the jury trial, and the Court furthermore made no mention of whether the commerce element needed to be proved *to the jury.* Nonetheless, the Court's utterances in *Torres* and *Taylor* increase the likelihood that the Court will invalidate § 70504(a)'s provision that the jurisdiction of the United States be determined *solely* by the trial judge. In future prosecutions under § 70503 with respect to vessels "subject to the jurisdiction of the United States," trial courts might be well advised after making the preliminary determination required by §

Cuevas-Almonte urges the Court to accept the position of the District of Columbia Circuit in *Miranda* that whether a vessel is subject to the jurisdiction of the United States under Section 70504(a) is a question of subject-matter jurisdiction, acknowledging that "Section 70504(a) is a question for the Court and not an offense element." At the same time, he argues that the Court "should adopt the Ninth Circuit's *Perlaza* decision," in which the court found that,"[f]or the Government to prosecute someone under the MDLEA, the Government must satisfy at least one of these 'statutory jurisdiction' requirements" defining a vessel subject to the jurisdiction of the United States under Section 70504(a), *Perlaza*, 439 F.3d at 1160, and "[w]hen that jurisdictional inquiry turns on 'factual issue[s],' such as the question . . . whether the Go–Fast was stateless, the jurisdictional inquiry *must* be resolved by a jury." *Perlaza*, 439 F.3d at 1167. Thus, Cuevas argues that determining whether a vessel is without nationality is simultaneously a question of law for the Court under *Miranda* and a question of fact for the jury under *Perlaza*. If the issue of whether a vessel is without nationality is an issue of subject-matter jurisdiction for the Court to decide as a matter of law, as Cuevas-Almonte argues under *Miranda*, he failed to explain how his Sixth Amendment right was violated by Section 70504(a) providing for the court's determination of questions of law. If the issue of whether a vessel without nationality is a factual issue for the jury, as Cuevas-Almonte argues under *Perlaza*, then Section 70504(a) cannot be at the same time "a question for the Court," as Cuevas-Almonte argues under *Miranda*. Cuevas-Almonte's arguments are contradictory, inconsistent and illogical. Cuevas-Almonte did not make citation to or discussed the Second Circuit opinion in *Prado* or the First Circuit opinion in *Gonzalez*, on which *Prado* relied.

Upon review of the parties' arguments and the circuit courts' decisions involving the issue whether Section 70504(a) concerns subject-matter jurisdiction or a "jurisdictional element" "specifying what is needed so that the reach of the statutory prohibition extends to conduct occurring outside the territorial borders," *Prado*, 933 F.3d at 138, the Court finds

---

70504(a) so that trial may proceed, to submit the issue of jurisdiction over the vessel to the jury notwithstanding the statutory word "solely."
*Prado*, 933 F.3d at 139 n. 9.

that it is not necessary at this time to decide which position is more persuasive. That is because whether Congress intended Section 70504(a) to be a limit on subject-matter jurisdiction or a "jurisdictional element," Section 70504(a) provides explicitly that the issue of whether a vessel is subject to the jurisdiction of the United States is a preliminary question of law to be determined by the trial judge. Accordingly, the court rejects as meritless Cuevas-Almonte's argument that Section 70504(a) violates his Sixth Amendment right to trial by jury by committing determination of whether a vessel is subject to the jurisdiction of the United States as a preliminary matter of law to the trial judge.

### 2. The Protective Principle, Under International Law, Does Not Supply Jurisdiction for the Use of the MDLEA

Cuevas-Almonte asserts that the Court "should conclusively hold that the [protective principle, under international law,] does not authorize MDLEA jurisdiction over foreign nationals on foreign boats with no U.S. link." It is not clear how his assertion is relevant to his motion to dismiss, as Cuevas-Almonte goes on for three pages of his supplemental brief discussing generally "the protective principle" without explaining its relevance to his case. Cuevas-Almonte explains that "justifying MDLEA jurisdiction under the protective principle requires a nexus between the drug trafficking and the U.S." (ECF No. 142.) and thus "the protective principle does not authorize the prosecution of wholly foreign drug offenses, bearing no ties to the United States." However, Cuevas-Almonte fails to explain how "the protective principle, under international law," would apply in this Circuit, particularly in light of the Third Circuit's holding that "the government need not establish a domestic nexus to prosecute offenses under the Maritime Drug Law Enforcement Act." *Martinez-Hidalgo* 993 F.2d at 372. Moreover, Cuevas-Almonte did not make a motion to dismiss based on lack of jurisdiction; rather, his motion is based on the ground that the statute under which he is prosecuted is unconstitutional. Thus, his argument concerning the protective principle is rejected as meritless and entirely beyond the scope of this motion.

### 3. Section 70502(d)(1) Does Not Cover a Claim of Nationality

Finally, Cuevas-Almonte cites to 46 U.S.C. §§ 70502(d)(1)(B) and 70502(d)(1)(C), arguing that "[t]here is no reason to apply *this* provision to a claim of nationality, like the one

made here." (emphasis added). However, he does not identify which one of the two sections he is referencing does not apply to him.[9] The Government asserts it is prosecuting Cuevas-Almonte under Section 70502(d)(1)(B), not Section 70502(d)(1)(C), and since he does not raise statutory or constitutional arguments regarding Section 70502(d)(1)(B), his arguments are inapposite. Cuevas-Almonte relies primarily on *Davila-Reyes* in support of his new argument that Section 7050(d)(1) does not cover a claim of nationality, despite the Court's October 21, 2022 order explaining that *Davila-Reyes* has no longer any persuasive value. To the extent that his argument is capable of understanding, it is rejected as baseless particularly given the defendants did not make a claim of nationality or registry in this case.[10]

### III.   CONCLUSION

For the reasons stated above, the Court will deny Cuevas-Almonte's instant motion. An accompanying order of even date will follow.

**Dated:** May 8, 2024                                                    /s/ *Robert A. Molloy*
                                                                                **ROBERT A. MOLLOY**
                                                                                **Chief Judge**

---

[9] Cuevas-Almonte seems to think that the purported claims of nationality by him and Ramos-Guerra removes this vessel from the statelessness definition. However, since the Court concluded that the undisputed facts establish there was no claim of nationality or registry, his argument is factually unsupported.

[10] As noted above, Cuevas-Almonte's final argument in his supplement brief relies entirely on *Davila-Reyes* to support the theory that Section 70502(d)(1)(C) exceeds the scope of Congress's power under the Felonies Clause because the statute reaches conduct over which the United States lacks jurisdiction under international law. Cuevas-Almonte simply regurgitates that court's vacated decision in contravention of this Court's October 21, 2022 order directing him to support his arguments with binding or persuasive authorities. Accordingly, the argument is rejected as unsupported and meritless.